# RANDALL STEWART *vs.* LOTTIE J. STEWART.

*Bill for Divorce a Mensa Upon Ground Avthorizing Divorce a Vinculo —Jurisdiction—Injunction to Restrain Defendant in Bill for Alimony from Disposing of Property—Amendment of Bill for Divorce.*

A suit for a divorce *a vinculo* is wholly different from a suit for a divorce *a mensa et thoro*, and they are authorized by distinct statutory provisions which prescribe different grounds for the granting of the two kinds of divorce.

The Court has no power to decree a divorce *a mensa* under a bill asking for that relief when the only ground therefor alleged is adultery, since under Code, Art. 16, secs. 36, 37, adultery is made a cause for a divorce *a vinculo*, and no discretion is given to the Court to grant a divorce *a mensa* upon a ground authorizing a divorce *a vinculo*.

When a bill asks for a divorce *a mensa* upon a ground which authorizes a decree *a vinculo* only, objection to the jurisdiction of the Court to grant the decree asked for may be raised by answer as well as by demurrer.

A bill by a wife for divorce and alimony alleged that the defendant intended to dispose of his dwelling and business place and that he would do so to the injury of the plaintiff, and asked for an injunction restraining the defendant from disposing of his house or place of business or the contents thereof until the final disposition of the suit. *Held*, that the injunction should not be granted because there is no allegation that the defendant purposed to dispose of his property with a design to defraud the plaintiff of her marital rights, and also because the case stated in the bill did not authorize the granting of the kind of divorce asked for and the injunction could only be ancillary to the principal relief.

A wife may be entitled under some circumstances to alimony without asking for a decree of divorce and may amend the bill for a divorce and alimony accordingly.

*Decided March 1st, 1907.*

Appeal from the Circuit Court of Baltimore City (NILES, J.)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*C. Dodd McFarland,* for the appellant.

*W. Purnell Hall,* for the appellee.

PEARCE J., delivered the opinion of the Court.

The bill in this case was filed by the appellee against the appellant for divorce *a mensa et thoro*, the only ground alleged being *adultery*. The bill after alleging that the defendant had been guilty of the crime of adultery with a woman specifically named, and others unknown to the plaintiff, within six months preceding the filing of the bill further alleged that the defendant is possessed of certain leasehold property on Druid Hill avenue in Baltimore City, and that he conducted a restaurant and saloon on Lee street, in Baltimore, which business yielded him over one hundred dollars a week, that she had not lived or cohabited with the defendant since Sept. 7th, 1906, when she discovered his adulteries, though she is destitute of means of support, or of prosecuting her suit for divorce; and that the defendant had informed her "that he intended to dispose of his dwelling and business place, and that she believes he will do so to the great injury of your oratrix in the premises, and that only by the writ of injunction can your oratrix's marital rights be fully protected until the final determination of this suit."

. The prayer of the bill was for alimony, both *pendente lite*, and permanent, and for a reasonable sum of money for employment of counsel and expenses of her suit; also for an injunction restraining the defendant "from disposing of or assigning said leasehold property or his place of business, *or the contents thereof*, until the final disposition of the suit." An injunction was issued immediately upon the filing of the bill, in the precise language of the prayer therefor. In a few days thereafter, the defendant filed an answer denying that he had been guilty of any act of adultery, and alleging that the plain - tiff abandoned him on Sept. 7th, 1906; that they had res ded on Druid Hill avenue, though he conducted his business on Lee street, and that about the date last mentioned, he proposed for reasons of economy to rent out his dwelling and remove to the building in which he conducted his saloon and restaurant, and to gain the plaintiff's consent, offered to give her the rent of the dwelling about $25.00 a month and allow

her all the profit she could make by managing the restaurant, but that she declined to live with him at his place of business. He alleged that he purchased the leasehold property mentioned for $1500, paying $300 of his own money and giving a building association mortgage for $1200 on which he paid $7.97 weekly; that he had only been in business on Lee street about four months and that the expenses were equal to the receipts, and that he had no other property, but that the plaintiff had furniture worth $400 or $500. He also denied the allegations of that paragraph of the bill in which plaintiff stated he had informed her he intended to dispose of his dwelling and place of business, and that she believed he would do so to her injury, and further denied that she was entitled to a divorce *a mensa et thoro* or to any relief whatever under the allegations of her bill, because she does not charge either cruelty of treatment, excessively vicious conduct, or abandonment and desertion, these being the only three causes for which a divorce *a mensa et thoro* may be decreed as he alleges, under sec. 37 of Art. 16, which is the only statute in this State relating to divorces *a mensa et thoro*, and the bill praying specifically for such decree.

On the same day this answer was filed, the defendant moved for the dissolution of the injunction. Upon the filing of the bill on Sept. 8th, 1906, an order was passed the same day requiring the defendant to pay the plaintiff $25 as counsel fee for her solicitor, and $7.50 per week as alimony *pendente lite*, unless cause to the contrary was shown on or before Sept. 25th, 1906, provided a copy of that order was served on defendant on or before Sept. 13th, 1906, and service was made Sept. 8th, 1906. On Oct. 12th, 1906 the motion to dissolve was refused, and the order of Court as to alimony and counsel fee was made absolute, and appeal was entered from that order same day. There is nothing in the record to show whether any testimony was taken nor does it appear whether any argument or hearing was had at or before the passage of the order appealed from. The principal question in the case, and the one which goes to its root, is whether the Court has

*power* to decree a divorce *a mensa et thoro*, when that is the specific decree sought, and the only ground alleged is adultery.

Prior to the Act of 1841, chapter 262, all divorces emanated from the Legislature. By that Act, jurisdiction "of all applications for divorce" was given to the Chancellor or to the County Courts of the State, and section 21 of Art. 3 of the Constitution of 1851 forbid the granting of any divorce by the General Assembly, and this has ever since continued to be the fundamental law in this State. The transfer of jurisdiction from the General Assembly to the Courts thus became exclusive, but full discretion was not conferred upon the Courts. From a period before the Revolution, however, the Court of Chancery in this State had full jurisdiction in cases of alimony though no divorce had been decreed or was asked for, and though the case made by the bill and proof, would not, according to the Ecclesiastical Courts in England, entitle her to *a divorce a mensa et thoro*. *Hewitt* v. *Hewitt*, 1 Bland 93; *Jamison* v. *Jamison*, 4 Md. Ch. 217. In 2 *Nelson on Divorce and Separation*, p. 979, the author says, "The power to grant a decree from bed and board must be conferred by a statute *stating the causes for which it may be granted.* If the power is not so conferred the Court will not grant a separation for the common law causes of divorce."

In 14 *Cyc.*, p. 711, it is said: "In some jurisdictions either kind of divorce may be granted in the discretion of the Court." We have examined the cases referred to in this passage, and find that they all rest upon construction of the statute. Thus in *Collier* v. *Collier*, 16 N. C. 352, the Court said, "the Legislature had transferred that jurisdiction, *with full discretion*, to the Courts;" and in *Sullivan* v. *Sullivan*, 112 Mich. 674, where the complainant asked for a decree of separation and not for one *a vinculo*, and the Court decreed the latter, justifying its action by the statute, one section of which provided for a divorce from bed and board on the ground of extreme cruelty, and for certain other causes, and the next section provided that a divorce from the bond of matrimony might be decreed for any cause mentioned in the preceding section, whenever in

the opinion of the Court the circumstances of the case should be such as made it discreet and proper to do so. It is not believed any case is referred to by the text writers warranting the exercise of discretion by the Court in granting a decree for a cause not stated in the statute unless that discretion is conferred by the statute either in express terms or by clear implication.

Apart from the technical rules of construction generally which lead to this conclusion and the apparent absence of authority to sustain the contention of the appellee, an examination of our own statute seems to strengthen this conclusion.

Sec. 36 of Art. 16, relates exclusively to the granting of decrees for divorce *a vinculo*, and enumerates the grounds upon which the statutory jurisdiction conferred may be exercised, but intimates no authority to grant such decree for any cause not enumerated in that section.

Sec. 37 of Art. 16, relates exclusively to the granting of decrees *a mensa et thoro* and enumerates the grounds upon which that jurisdiction (which is also purely statutory) may be exercised, none of which causes would warrant a decree of divorce *a vinculo;* but it then proceeds to provide that "the Court may decree a divorce *a mensa et thoro* in cases where a divorce *a vinculo* is prayed, if the causes proved be sufficient to entitle the party to the same," that is to say if the causes or some of them, proved though not necessarily alleged are such as warrant a decree *a mensa et thoro*, though the causes *alleged* as ground for a decree *a vinculo*, may not be established by proof. A reference to the Act of 1841, ch. 262, shows that as originally enacted, the clause last quoted above, was followed by the words "under the provisions of this Act," these words being omitted when that Act was originally codified. This provision only dispenses with *formal allegation* in a bill for a decree, *a vinculo*, of ground for a divorce that would warrant a decree *a mensa et thoro*, but permits the offer of proof of the latter ground, upon failure of proof of the former, and bases the decree upon the actual proof, thus confining the exercise of jurisdiction to the special statutory ground named in the statute.

. In *Schwab* v. *Schwab*, 93 Md. 385, JUDGE SCHMUCKER, speaking for the Court said: "An action for a divorce *a vinculo* is in every respect different from that for a divorce *a mensa et thoro*. They are both statutory proceedings, and they proceed upon different sections of the statute, are founded upon a different state of facts, and aim at entirely different results." And in *Robertson* v. *Robertson*, 9 Daly, 53, in a similar case, JUDGE VAN BRUNT said: "The action for absolute divorce is entirely different in every respect from an action for a separation. They have no relation one to the other and proceed under entirely different divisions of the statute law." The question here is not, as stated by the appellee, whether the party complaining can be required to take more than is desired or asked for but whether the Court has power to grant any other relief upon the single ground stated, than the one provided by the statute. Whatever views we might entertain of the wisdom of the law in discriminating and fixing the different grounds upon which alone these respective forms of divorce may be granted, our only power is to construe the law as it stands upon the statute book, and we are not able to construe this law otherwise than we have done. There is much diversity of opinion as to the desirability of decrees of separation, from the standpoint of public policy, and that subject is well discussed in *Nelson on Divorce and Separation*, p. 978 and 979.

In *Barclay* v. *Barclay*, 98 Md. 374, we have expressed our approval of the opinion of the Master of the Rolls in *Besant* v. *Wood*, L. R. 12 Ch. Div. 605, "that it would be better in many cases for married people to avoid the expense and scandal of suits for divorce by settling their differences quietly by the aid of friends out of Court, though the consequence might be that they would live separately."

But the appellee contended that if the bill did not contain such allegations as warranted the decree sought, the proper remedy was to demur to the bill, citing in support of this contention *Miller* v. *Balto. County Marble Co.*, 52 Md. 646, in which the Court said, "Whenever the ground of objection or defense is apparent on the face of the bill itself either from

matter contained in it, or from defect in its frame, it is well settled that the proper mode of taking advantage of such objection is by demurrer." In this case the objection goes to the whole bill, or at least to all except the prayer for alimony, and if the defendant is not guilty of adultery, as he has sworn he is not, he would by demurrer have admitted the truth of that charge in the bill. He ought not to be driven to that position, and we think in such a case as this, the defense may be properly made by answer. Ordinarily the defense of limitations in equity must be relied on by plea or answer. *Allender* v. *Trinity Church*, 3 Gill, 166. But in *Belt* v. *Bowie*, 65 Md. 355, it was held that it might be availed of by demurrer, and again in *Biays* v. *Roberts*, 68 Md. 512.

It is settled law in this State that a husband may alienate his property at will, even though in the exercise of this right he strips himself of all means of supporting or maintaining his wife, provided he does so *bona fide* and with no design of defrauding her of her just claims upon him and his estate. *Ricketts* v. *Ricketts*, 4 Gill, 105; *Feigley* v. *Feigley*, 7 Md. 561. There is no charge in this bill of any intent to defraud her of her marital rights. The only charge is that he had declared his purpose to dispose of his dwelling and place of business followed by the expression of her belief that he would do so to her injury. We do not think this allegation warranted an injunction, and the motion to dissolve should have been allowed. Moreover the injunction is only ancillary to the chief purpose of the suit, and if the case made by the bill did not entitle her to a decree, she could not be entitled to an injunction. *Gelston* v. *Sigmund*, 27 Md. 334.

In *Rose* v. *Rose*, 11 Paige, 167, an injunction which prohibited the husband not only from parting with his property, but from carrying on his ordinary business, was declared too broad, and properly, as we think. This objection is especially apparent in this case, since the order which continued the injunction also made absolute the order for weekly alimony of $7.50, and the only evidence in the case of his ability to pay that sum is the alleged weekly profits from carrying on his ordi-

nary business. It follows from what we have said that the order appealed from must be reversed and the injunction be dissolved, but as the plaintiff would have a right to proceed for permanent alimony, without asking for any decree of di vorce, and may desire to apply for leave to amend her bill accordingly, the case will be remanded to enable her to do so if she desires.

> *Decree reversed, injunction dissolved, and cause remanded for such further proceeding as may be in conformity with this opinion. Costs to be paid by appellant.*