## LOUIS G. POLLEY

*vs.*

## MARGARET E. POLLEY.

*Divorce and alimony : desertion; if fault of the wife, no ground*
*for divorce.*

Where the allegations of a bill for a divorce, if supported by
proof, are sufficient to warrant a decree, they are sufficient, if
proved, to support a bill for alimony alone. *p. 62*

But alimony alone should not be granted, unless the facts
alleged in the bill and proved, would furnish sufficient cause
for the granting of a divorce *a vinculo* or *a mensa.* *p. 62*

Alimony is maintenance afforded the wife where the hus-
band refuses to give it, or where from his improper conduct
the husband compels her to separate from him.          p. 63

It is a provision for the wife, to continue during their joint
lives, or so long as they remain separate.                p. 63

Where the refusal of the husband to live with the wife is due
to such misconduct on the part of the wife, and disease result-
ing to her therefrom, as to render it impossible to continue mat-
rimonial cohabitation with safety to his health or self-respect,
it can not be considered as substantiating a charge of desertion,
so as to warrant the granting of a divorce to the wife, on such
grounds, or the awarding of alimony.                      p. 66

Desertion as a matrimonial offense is the voluntary separa-
tion of one of a married couple from the other, or a voluntary
refusal to renew a suspended cohabitation, without justification.
p. 66

On an application for divorce and alimony, the court can
give no other relief than such as is provided by law and prayed
for in the bill.                                         p. 67

On an application for a divorce and alimony, where the proof
does not support the allegations, and justifies neither the grant-
ing of the divorce, nor the awarding of alimony, the court may
not decree a restitution of property. *p. 67*

*Decided February 29th, 1916.*

Appeal from the Circuit Court of Baltimore City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was submitted to BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Isaac Lobe Straus* submitted a brief for the appellant.

*C. Arthur Eby* and *John F. Frazer* submitted a brief for the appellee.

BRISCOE, J., delivered the opinion of the Court.

The bill in this case was filed by the wife against the husband, on the 22nd day of January, 1915, in the Circuit Court of Baltimore City, for a divorce *a mensa et thoro*. alimony and counsel fees, upon the ground of abandonment and desertion.

The defendant answered the bill on the 16th of February, 1915, denying its allegations and avers that he has not abandoned and deserted his wife in the legal sense, but that her conduct has been such as to make it impossible for him to live with her as her husband, and that he is under no legal obligation any longer to support her.

The case was heard in open Court, upon bill, answer and proof, but after the hearing, and before final decree, it is stated by the appellee, in her brief, "that the plaintiff, not desiring a divorce of any kind from her husband, in fact being opposed to the same upon principle and having been informed that she might obtain alimony without divorce from her husband, filed a petition to amend her bill by striking out the prayer for partial divorce, and this was authorized by order of Court on June 30th, 1915."

The prayer of this petition was for leave to amend the bill, by striking out the prayer therein contained for divorce *a mensa et thoro,* so that the bill may remain a bill for per-

manent alimony, alimony *pendente lite,* and counsel fees to be allowed the plaintiff as against the defendant.

Upon this petition the Court below on the 30th day of June, 1915, granted the leave, "to amend the bill as prayed," and on the 21st of September, 1915, passed the decree, set out in the record, from which this appeal has been taken.

By the decree the defendant was directed, first, to pay unto the plaintiff by way of alimony, a weekly allowance of five dollars, during the lifetime of the plaintiff; second, that the plaintiff was entitled to receive one-half of the net proceeds, from the income or sale of certain property held by them, as tenants by the entireties; third, that the defendant deliver up to the plaintiff such of the personal property, which he has belonging to her, and, fourth, that he pay a certain named counsel fee to the attorney of the plaintiff and the costs of the suit.

One of the causes for which a divorce *a mensa et thoro* will be decreed, as set out in section 38 of Article 16 of the Code, is abandonment and desertion, and this is the ground relied upon by the wife, for the award of alimony, the principal relief sought by the amended bill.

It is well settled by numerous decisions of this Court, that where the allegations of a bill of complaint are sufficient to support a decree for a divorce, they would be sufficient upon proof also to support a bill for alimony alone, but that alimony alone can only be granted upon grounds sufficient to justify a divorce *a vinculo* or *a mensa.* *Helms* v. *Franciscus,* 2 Bland, 565; *Wallingsford* v. *Wallingsford,* 6 H. & J. 485; *Dunnock* v. *Dunnock,* 3 Md. Chancery, 141; *Outlaw* v. *Outlaw,* 118 Md. 498; *Walker* v. *Walker,* 125 Md. 660: *Outlaw* v. *Outlaw,* 122 Md. 695.

In the case at bar it seems to have been conceded, upon the hearing, that the proof would not support a decree for divorce *a mensa,* and the bill was dismissed in this respect.

It is stated in the appellant's brief that at the conclusion of the argument, the judge presiding stated from the bench

that, upon the proof, he could not grant the divorce prayed for, but would hold under consideration the question whether she was entitled to alimony under the amended bill. No further proof was taken, but the case submitted on the amended bill and the proof taken on the original proceedings.

In *Wallingsford v. Wallingsford,* 6 H. & J. 485, it is said, that alimony is a maintenance afforded to the wife where the husband refuses to give it or where from his improper conduct he compels her to separate from him. It is a provision for her to continue during their joint lives or so long as they live separate. Upon the death of either or upon their mutual consent to live together, it ceases: *McCaddin* v. *McCaddin,* 116 Md. 572; *Emerson* v. *Emerson,* 120 Md. 590; *Outlaw* v. *Outlaw,* 118 and 122 Md., *supra.*

By section 14 of Article 16 of the Code it is provided the Courts of Equity of this State shall and may hear and determine all causes for alimony, in as full and ample manner as such causes could be heard and determined by the law of England in the Ecclesiastical Courts there.

In *Helms* v. *Franciscus,* 2 Bland, 545, CHANCELLOR BLAND, in referring to this Act (Ch. 12, sec. 14, Acts of 1777, Feby. Session), said: "Yet according to the provisions of this Act, it (the Court) cannot allow itself to receive any matter as a sufficient ground for granting alimony alone, which would not be a sufficient foundation in England for granting a divorce *a mensa et thoro,* together with its incident alimony."

This rule, it will be seen, has been approved and followed in numerous cases in this Court: See *Outlaw* v. *Outlaw,* 118 Md. 503; *Walker* v. *Walker,* 125 Md. 660; *Outlaw* v. *Outlaw,* 122 Md. 695.

Unless, then, the proof in this case furnishes a sufficient ground or foundation to justify the Court in granting a divorce *a mensa,* with alimony, it is too clear for any question, that under the authorities it would not be sufficient to justify a decree awarding alimony alone.

This brings us to a consideration of the facts, as disclosed by the record.

While the case is an unfortunate one, for both parties, and the facts are both unusual and revolting, we do not consider it necessary to set out the testimony at any length, because in our opinion, it does not sustain the appellee's contentions, and the plaintiff has failed to make out a case entitling her to alimony, under the bill.

It appears that the plaintiff and defendant were married on the twenty-fifth day of June, 1902, in the City of Savannah, Georgia, and lived together as husband and wife until the 16th day of May, 1914, when she returned to Savannah and remained until the first of October, 1914; that about two months after their marriage the plaintiff developed a severe and serious case of syphilis, which she did not contract from her husband and which has continued in an aggravated form until the present time. At the date of the trial, in June, 1915, she was under the care and treatment for the disease, by Dr. Settle, chief of the Out-Patient Department and of Nervous Diseases of the University of Maryland. Dr. Settle testified that she was in need of continual treatment, at this time, for the disease.

Dr. Heriot, of Savannah, Ga., testified that upon his first examination of her, two months after the marriage, he found a severe case of syphilis, in the latter part of the secondary stage of the disease, and in his opinion, at that time, she had it "a little over four months and a half," from the condition he found her. He treated her for over two years, and was treating her for it when she left Savannah, in 1904. The proof is clear that she did not contract it from her husband, and he had no knowledge of her condition, until two months after she had been married to him, when it was discovered by the doctor, and he was informed of the disease.

The defendant stated the reason why he closed his house and disposed of the furniture, after his wife left him, as follows: Well, starting right from the time of her sickness,

coming on through this loan business, peddling the piano out of the house without a moment's notice, pawning her jewelry, stealing the money from the organization, a fear of the affliction that she had all breaking out on her hands and possibly giving it to him, with prison staring me in the face for what she had done, it just come all to me in one conclusion that the best thing I could do was to give it up entirely, that I couldn't stand it no longer. I had strived, I fought to keep this thing down. There isn't a soul in this whole world knows what that woman had and what she has done until she forced it out of me in this Court House. I have never revealed it to anybody. * * * Q. You have spoken of those sores breaking out on her hands. Tell the judge about that and what your apprehensions were on the subject? A. They would break out between the little finger and the ring finger. I would beg her to keep it tied up for fear it would get in my victuals. Q. How often did that occur? A. Sometimes once in a year and maybe last for two or three months. Q. How long before she last went South did you last see it? A. In the latter part of 1913, in the summer. Q. You saw it on her hands? A. Yes. Q. You knew what it was? A. Yes, I realized what it was coming from because it came so regularly. Q. Well, why did you refuse to comply with her request to go with her and get that money? A. Just as I told you before. She involved me in so much trouble, and then the fear of this breaking out on her hands, which developed all into one big ball and then it exploded, and I couldn't stand it no longer."

It will be thus seen, that the defendant contends that his refusal to renew his marital relations with the appellee is based upon her wilful misconduct and is not without justification on his part or on account of his wrongful conduct, and that this refusal to continue the matrimonial cohabitation, under the facts and circumstances of this case, was not such a desertion, or a sufficient ground for a divorce *a mensa,* or for alimony alone without a divorce.

Adopting and applying the legal principles established by the cases referred to and those to be hereafter cited, we think, the proof is amply sufficient to sustain the appellant's contention.

In *Matthews* v. *Matthews,* 112 Md. 585, this Court said, desertion as a matrimonial offense is the voluntary separation of one of the married parties from the other or the voluntary refusal to renew a suspended cohabitation, without justifica tion either in the consent or the wrongful conduct of the other.

In *A. & E. Ency. of Law,* Vol. 9, page 764, it is said: Desertion is the wilful termination of the marriage relation by one of the married parties, without lawful or reasonable cause, or a refusasl without reasonable cause to renew the marriage relation after parties have been separated.

In 14 *Cyc.* 633, it is stated and supported by authority, that "It would seem to subserve the interests of public policy and the sacredness of the marriage tie, however, to permit a spouse to set up in defense of his or her desertion such misconduct on the part of the other as would render it impossible to continue the matrimonial cohabitation with safety, health and self-respect, although the misconduct is not in itself a sufficient ground for divorce, and some courts so held." See *Lyster* v. *Lyster,* 111 Mass. 327; *Stocking* v. *Stocking,* 76 Minn. 292; *Gillinwaters* v. *Gillinwaters,* 28 Mo. 60; *Neff* v. *Neff,* 20 Mo. App. 182; *Williams* v. *Williams,* 130 N. Y. 193; *Powell* v. *Powell,* 29 Vt. 148, and *Yeatman* v. *Yeatman,* Vol. 1, L. R. P. & D. 489.

In this case, the proof shows that the appellant, the husband, is an industrious, respectable and honest man, and that his refusal to live longer with the appellee has been caused not by his misconduct, but by such misconduct on the part of the wife, as renders it impossible to continue the matrimonial cohabitation with safety to his health and self-respect. *Hawkins* v. *Hawkins,* 65 Md. 104; *Sharp* v. *Sharp,* 105 Md. 581; 9 *A. & E. Ency. Law,* 777; *Outlaw* v. *Outlaw,* 122 Md. 695;

3 *Blackstone Com.* 94; and *Leach* v. *Leach,* 8 Atlantic R. 349.

The principle established by the cases cited and the reasoning upon which they are founded, are controlling in the present case. It follows for the reasons stated that there was error in that part of the decree of the 21st of September. 1915, which awarded alimony to the appellee.

The second part of the decree, which affects property held by the husband and wife, as tenants by the entireties, need not be considered, because it is admitted, the property has been sold under mortgage proceedings and the interest of both parties therein has been terminated, with no surplus after the payment of the mortgage claim and the expenses of foreclosure.

As to the third part of the decree which orders and decrees that the husband deliver up to the wife possession of such of the personal property which, it is alleged, he has belonging to her, we need only say that this Court has no power to grant any other relief than the one provided by the statute and prayed by the bill.

If the case made by the bill and proof did not entitle the wife to a divorce or to alimony alone, and we have so held, the Court would not be authorized to decree a restitution of property or a decree, in nature of a mandatory injunction, as was done in this case: *Gelston* v. *Sigmund,* 27 Md. 334, and *Stewart* v. *Stewart,* 105 Md. 303.

The decree of the 21st of September, 1915, will, therefore, be reversed and the bill dismissed, the costs in this Court and in the Court below to be paid by the appellant.

> *Decree reversed and bill dismissed, with costs to the appellee, in this Court and in the Court below.*