# CARROLL J. MANN

## *vs.*

# ELIZABETH MANN.

*Divorce and Alimony—Abandonment and Desertion—Sequestration of Husband's Property.*

Where, in a suit by a wife for alimony, such relief was asked on the ground of abandonment and desertion alone, a decree therein awarding permanent alimony established the abandonment and desertion, and in a subsequent suit by the wife for divorce, it appearing that the decree for alimony was still in force, except as to the amount allowed, and that the separation of the parties had continued, it could not be contended that there was no evidence to justify a divorce *a mensa et thoro.*

p. 523

In a suit by a wife for divorce and alimony, an intent on the husband's part to defraud the wife must be alleged and proved, in order to warrant the issuance or continuance of an injunction restraining him from disposing of his property.

pp. 523-525

In the absence of a prayer for such relief, and of evidence to justify it, a court of equity should not, in a suit by the wife for divorce, require the husband to convey part of his property to a trustee, to be sold for the purpose of securing the payment of alimony.

p. 525

*Decided January 17th, 1924.*

Appeal from the Circuit Court of Baltimore City (DUFFY, J.).

Bill by Elizabeth Mann against Carroll J. Mann for divorce and incidental relief. From a decree for plaintiff, defendant appeals. *Affirmed in part and reversed in part.*

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*William H. Lawrence,* with whom was *Paul Beall* on the brief, for the appellant.

*James E. Tippett,* with whom was *George L. Mattingly* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

In 1903 the appellee filed in Circuit Court No. 2 of Baltimore City her bill of complaint against the appellant, in which she alleged that she was married to the defendant in January, 1876, and lived with him in Baltimore City until the month of May, 1878; that during the time they lived together the defendant did not properly support her and she was dependent upon others for the support she received, and that, by reason of his neglect of her and his failure to provide for her support, she was, in May, 1878, obliged to leave him and seek support and maintenance from her mother, with whom she took employment, and from whom she received support and compensation for the services she rendered; that she had been required to earn her own living ever since and had never received anything from the defendant, who, at the time of the filing of the bill, was possessed of considerable means, was engaged in business in Baltimore City and owned property in Cape May, in the State of New Jersey; that she had always been a chaste, affectionate and faithful wife, that she and her husband had no children, and that she had theretofore refrained from bringing suit against him because he said he would be without any means until after his mother's death. The bill prayed for an allowance of alimony. The defendant answered the bill and alleged that he properly supported the plaintiff until she abandoned and deserted him without "legal justification or excuse"; that he had not contributed anything to her support since then and that she had not during that time made any claim upon him of any kind, and that he was advised and believed that since their separation she had been living "in houses of evil fame, and associating with lewd and indecent people." The court on the 31st of

July, 1905, passed a decree dismissing a cross-bill of the defendant, and requiring him to pay the plaintiff as permanent alimony the sum of five dollars per week.

On the 6th of January, 1923, the appellee filed in the Circuit Court of Baltimore City her bill in this case against the appellant, in which she alleges that they were married in 1876, and that about a year after their marriage, by reason of the abuse, cruelty and "exceedingly vicious conduct" of the defendant she was compelled to leave his domicile and take up her residence with her relatives; that in 1903 she instituted the proceedings and obtained the decree we have referred to, and subsequently obtained an order increasing the alimony allowed her to $7.50 per week; that since the passage of the last mentioned order she had become so old and enfeebled by bad health that she is no longer able to earn any wages; that the allowance of $7.50 per week is not sufficient to provide her with the necessaries of life; that the defendant is a man of considerable means, and in addition to stocks, bonds and other securities owns a valuable piece of real estate in Cape May, New Jersey; that their separation has continued uninterruptedly, and is final, without any reasonable expectation of a reconciliation; that ever since their separation and the decree referred to the defendant and a woman, whose name is unknown to the plaintiff, have been living together "practically as man and wife;" that the defendant has at all times been hostile to her, has tried "to prevent the payment" to her of the money necessary for her support, has "tried to conceal and cover up his securities and other property," has declared that she shall have no part of his property and that he will dispose of the same, and that she is afraid that when he is advised of the filing of the bill in this case he will "secrete, convey and dispose of his personal property in an effort to deprive" her "of her proper rights." The prayer of the bill is for a divorce *a vinculo matrimonii,* for alimony, for an injunction restraining the defendant from disposing of or concealing any of his

property pending the suit, and for general relief. The court passed an order allowing alimony *pendente lite* and granting an injunction as prayed "until the filing of the answer and the further orders of the court." The defendant answered the bill, admitting the marriage, the decree of Circuit Court No. 2 of Baltimore City and that the alimony therein allowed has been increased to $7.50 per week, and alleging that the plaintiff is a dressmaker, &c., and can "earn a reasonable wage;" that he acquired property from his father's estate in 1902 from which he has an annual income of $850 a year, and that after paying $390 per year to the plaintiff, as required by the order of court, and taxes on the Cape May property to the amount of $465.61, he has no income left, and that by reason of his "advanced age and impaired health" he is unable to earn any money; that he only lived with the plaintiff one year, that she left him without cause and that they have remained apart ever since; that the taxes on the Cape May property are very heavy and absorb the income from his other property, and that he has been unable to dispose of the Cape May property because of the dower interest of his wife. The answer also admits that the separation of the parties has continued for forty-six years, but denies that the defendant has been guilty of "adulterous" conduct, or that he has concealed his property, and also denies that he has declared that she shall have no part of his property, or that he will dispose of it for the purpose of preventing her from receiving any part of it.

The plaintiff offered evidence tending to show that she lives in one room on Carey Street for which she pays ten dollars per month rent; that she has no property or income other than the amount she receives from the defendant under the order of the Court; that for several years she has not been able to do any work because of bad health, and that since the first of the year 1923 she has been staying with her friend, Mrs. Stewart, who took her to her house because she was sick; that she has not lived with her husband since their

separation or the decree of the court in 1905; that she and her husband never had any children, and that she has no relatives who can do anything for her. The defendant, when called as a witness for the plaintiff, testified that he received from his father's estate about $15,000 in stocks and bonds and a property in Cape May, New Jersey, and that he received from his aunt, Mrs. Lyra, $3,000; that he still has the securities he got from his father, from which he has an income of $850 per year; that the property in Cape May consists of a frame dwelling and store, on which he pays $493.61 taxes and $28 water rent; that when the property is rented he gets $400 for the house and $250 for the store; that the property is in bad condition and that he has not the money to repair it; that he has been advised that it is not worth more than $5,000, but that it was assessed for the purpose of taxation at $10,000; that he had tried to farm a farm on the Harford Road belonging to Mrs. Wells but had given it up on account of his health; that he boards at Mrs. Wells', and has done so for about twenty-five years; that he boarded there before the death of her husband, who was his friend; that he is seventy-three years of age and cannot work any more; that his wife was a first class dressmaker; that he had been advised that he cannot sell the Cape May property unless his wife joins in the deed, and that he had never asked his wife to sign a deed for it because he knew that she would not do so; that he is willing to sell the Cape May property if he can get a good price for it, and that he would be willing to sell it for $10,000. When called as a witness on his own behalf he testified on cross-examination that he got from his mother's estate a house on Eden Street and about $500 in money; that his mother died about 1901, and that he could not remember what he got for the Eden Street house, but that it was "something like" $1,000.

The appeal is from a decree granting the plaintiff a divorce *a mensa et thoro*, awarding her permanent alimony of $12.50 per week, and further providing:

"in order that the provisions of this decree may be
more effectually performed, it is further adjudged,
ordered and decreed that the property situated at the
northeast corner of Ocean Street and Columbia Ave-
nue, in the city of Cape May, State of New Jersey,
and belonging to the defendant, be sold, and the com-
plainant and the defendant execute a deed of said
property to James E. Tippett as trustee, for the pur-
pose of selling same, and that upon the execution of
said deed, said trustee shall proceed to sell said prop-
erty at public auction, after having given due notice of
the time, place and terms of said sale, and upon col-
lection of the purchase money said trustee shall de-
posit the same with the clerk of this Court, to be
deposited to the credit of this cause and to be adminis-
tered under the further order of this Court."

The grounds of the appeal, as stated in the appellant's
brief, are (1) that the evidence in the case is not sufficient to
warrant a decree of divorce *a mensa et thoro,* and (2) that
the court below exceeded its jurisdiction in ordering the
appellant to execute a deed of the property in New Jersey
to a trustee, to be sold and the proceeds paid into court.

1. The bill in this case prays for a divorce *a vinculo
matrimonii,* but section 38 of article 16 of the Code provides
that a divorce *a mensa et thoro* may be granted where a di-
vorce *a vinculo matrimonii* is prayed, and section 38 also
declares that a divorce *a mensa et thoro* may be granted for
cruelty of treatment, for excessively vicious conduct and
for abandonment and desertion. In *Outlaw* v. *Outlaw,* 118
Md. 502; *Walker* v. *Walker,* 125 Md. 649; and *Polley* v.
*Polley,* 128 Md. 60, this Court held that alimony alone can
only be granted upon grounds sufficient to justify a divorce
*a vinculo* or *a mensa.* The only grounds upon which alimony
was prayed in the bill filed by the appellee in 1903 was
abandonment and desertion, and the decree in that case
awarding permanent alimony must be treated as establishing

the abandonment and desertion of the plaintiff. As the evidence in this case shows that that decree is still in force, except as to the *amount* allowed, and that the separation of the parties has continued ever since, we cannot hold that there is no evidence in this case to justify a divorce *a mensa et thoro.*

2. In the bill in this case there is no prayer for the sale of any part of the defendant's property, nor is there any evidence in the case to show that the defendant ever attempted to conceal or dispose of, or threatened to dispose of, any part of his property for the purpose of avoiding the payment of alimony, or for the purpose of defrauding, or defeating any right of, the plaintiff. It is said in section 1102 of 2 *Bishop on Marriage and Divorce* that "in some and perhaps most of the states, the court can require the husband to give security for the payment of the alimony," and in section 1093, that "sequestration is by some courts and in some circumstances resorted to." In 1 *R. C. L.,* sec. 89, p. 943, the author says: "In a number of states, by virtue of statutory authority, the courts may require the husband to give bond with approved security conditioned for the payment of the alimony as it accrues," and in note 20, p. 797 of 14 *Cyc.,* the writer refers to two North Carolina cases as authority for the statement that "sequestration will not be ordered unless there is reason to suppose that the husband is about to remove his property from the jurisdiction of the court." In *McCurley* v. *McCurley,* 60 Md. 185, the Court held that "the order or orders that may be passed upon the husband, if disregarded by him, may not only be enforced by the court granting them, by *fieri facias,* but also by attachment for contempt." See also *Hewitt* v. *Hewitt,* 1 Bland, 100. But in the case of *Wallingsford* v. *Wallingsford,* 6 H. & J. 485, the court said: "Alimony is a maintenance afforded to the wife, where the husband refuses to give it, or where from his improper conduct she is compelled to live separate from him. It is not a portion of his real estate, to be assigned to her in fee

simple, subject to her control, or to be sold at her pleasure, but a provision for her support," &c., and the court held that the decree of the lower court, which directed a sale of part of the husband's real estate, if founded on the petition for alimony, could not be sustained. In *Walker* v. *Walker, supra,* the Court, after quoting the definition of alimony in *Wallingsford* v. *Wallingsford, supra,* said: "This definition has never been departed from in any important particular." In the case of *Feigley* v. *Feigley,* 7 Md. 537, where the bill for a divorce and alimony also sought to have a deed from the husband to his sister set aside on the ground that it was made for the purpose of depriving the plaintiff of any provision out of his property, the Court, while holding that the statute of Elizabeth applied in such cases, was careful to say: "We do not wish to be understood as carrying this doctrine to an extent which would impose any restraint upon the husband in the free and unlimited exercise of his right to alienate his property at will, even though in the exercise of this right he strips himself of all means of supporting or maintaining his wife, provided he does so *bona fide,* and with no design of defrauding her of her just claims upon him and his estate." In *Stewart* v. *Stewart,* 105 Md. 303, the rule stated in *Feigley* v. *Feigley, supra,* is referred to by JUDGE PEARCE as the "settled law of this State," and in the same case he said, in reference to the prayer for an injunction restraining the defendant "from disposing of or assigning said household property, or his place of business, or the contents thereof, until the final disposition of this suit": "There is no charge in this bill of any intent to defraud her of her marital rights. The only charge is that he had declared his purpose to dispose of his dwelling and place of business followed by the expression of her belief that he would do so to her injury. We do not think this allegation warranted an injunction." If, in such cases, it is necessary to allege an intent to defraud the plaintiff to justify an injunction restraining the husband from disposing of his property, it is likewise necessary to prove such intent to defraud

to warrant the continuance of such an injunction. The injunction granted in this case restrained the defendant "until the further orders of the court from selling, secreting or in any other manner disposing of any of his stocks, bonds, securities or other property," and the decree granting the divorce, awarding alimony, and ordering the execution of a deed of the New Jersey property to the trustee, makes no reference to the injunction previously granted.

We are not to be understood as holding that a court of equity should under no circumstances require the husband to convey a part of his property to a trustee to be sold for the purpose of securing the payment of alimony awarded by it, or that a court of equity in such cases is without jurisdiction to require a husband residing in this State to convey real estate situated in another state to a trustee for that purpose. It is not necessary to consider or determine either of those questions in this case, for here there is no prayer for such relief and no evidence to justify it, nor is there any evidence of an attempt or intent on the part of the defendant to conceal or dispose of his property for the purpose of defrauding the plaintiff, to warrant a continuance of the injunction restraining him from disposing of any part of his property.

It follows from what has been said that so much of the decree of the court below as granted the plaintiff a divorce *a mensa et thoro* from the defendant and awarded her alimony must be affirmed, and that in all other respects the decree must be reversed, and cause remanded in order that an order may be passed dissolving the injunction granted.

> *Decree affirmed in part and reversed in part, and cause remanded in order that an order may be passed in conformity with the opinion of this Court, the costs in this Court and in the court below to be paid by the appellant.*