# JOYCE FAIRCHILD WINSTON *v.* HERBERT SAUL WINSTON

[No. 142, September Term, 1980.]

*Decided July 13, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON AND RODOWSKY, JJ.

*Alan D. Massengill* for appellant.

*Lee Gordon,* with whom were *Karl H. Goodman* and *Gordon & Goodman, P.A.* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

We granted certiorari in this case to review the decision of the Court of Special Appeals holding that a circuit court sitting in equity to consider divorce, alimony or annulment of marriage matters possesses no authority to enforce its decrees and orders by way of an injunction. In issuing our writ we specifically directed that the parties address whether *Kapneck v. Kapneck,* 31 Md. App. 410, 356 A.2d

572 (1976), the authority thought by both the trial court and the intermediate appellate court to be controlling here, was correctly decided.[1]

The relevant facts, concerning which there is no dispute, are the subject of an agreed statement entered into by the parties. With minor alterations, it reads:

> By decree dated November 11, 1978, petitioner Joyce Fairchild Winston was divorced *a vinculo matrimonii* from respondent Herbert Saul Winston, M.D. Included as a part of that judicial document was an order of the Circuit Court for Montgomery County directing ". . . that the provisions of the May 15, 1978, agreement of the parties are approved, ratified, and incorporated into this Decree (pursuant to Maryland Rule S77 b) insofar as the Court shall have jurisdiction, but shall not merge herein, pending further Order of the Court." The pertinent part of this agreement provides as follows regarding the marital home:

> 5. REAL PROPERTY:

> 5.1. The parties hereto own the marital home located at 10 Park Overlook Court, Bethesda, Maryland, of record as tenants by the entireties. The parties hereto agree that the Wife is the sole owner of, and shall have the right of exclusive occupancy of, the marital home and the Husband will promptly, prior to divorce, execute a deed conveying legal title of the property from the Husband and Wife to the Wife. The Husband shall vacate the home prior to January 1, 1979, and shall leave the home,

---

1. The publishers' notes to Kapneck v. Kapneck, at both 31 Md. App. 410 and 356 A.2d 572, stating that the Court of Appeals denied certiorari on July 15, 1976, are in error. No petition seeking certiorari was filed by either party to that litigation and, in fact, the Kapnecks informed this Court that the case had been settled. The Court of Appeals, however, did deny for want of standing a request by the Women's Law Center, Inc. to intervene and seek review of the intermediate appellate court's decision. Women's Law Center, Inc. v. Kapneck, 278 Md. 739 (1976).

including appliances, clean and in a good state of maintenance and repair. At any time prior to the day the Husband vacates the house, the Wife shall have access thereto at all reasonable times.

On July 26, 1979, after being unsuccessful in getting the respondent to vacate the marital home, the petitioner filed a Petition for Contempt and Injunctive Relief. A Rule to Show Cause was issued pursuant to this petition on December 3, 1979, which required the former husband to show cause (i) why he should not be held in contempt of court and remanded to the custody of the Sheriff for Montgomery County, Maryland, until he purged himself of contempt by vacating the premises located at 10 Park Overlook Court, Bethesda, Maryland, pursuant to the Decree of Divorce issued by the court on November 11, 1978; and (ii) why any other appropriate action, based on the evidence presented at the hearing on this rule, should not be granted. At the hearing, the doctor challenged the authority of the court to grant the relief requested.

Relying on the holding of the Court of Special Appeals in *Kapneck v. Kapneck, supra,* the circuit court concluded it was without jurisdiction to afford Mrs. Winston either the contempt or the injunctive relief requested. The trial judge reasoned:

[In *Kapneck,* the intermediate appellate court] pointed out that in divorce proceedings an equity court does not sit in the exercise of its ordinary equity jurisdiction [but possesses only those powers enjoyed by the ecclesiastical courts of England]. To fill the breach created by *Kapneck,* the legislature passed chapter 221 of the Laws of Maryland 1977 and later chapter 794 of the Laws of Maryland 1978, amending Court's Article section 3-603. It is clear, however, that the 1978 amendment applies only to cases filed after January 1, 1979. The 1977 amend-

ment was passed as emergency legislation and took effect upon its approval on April 29, 1977. This case was filed April 22, 1977, and even if it could be argued that the 1977 amendment was applicable to pending cases, this is of no avail as the 1977 amendment did not accomplish the total correction the Legislature apparently intended.

When Mrs. Winston appealed, the Court of Special Appeals, in an unreported opinion, perceived a distinction between the contempt and injunctive relief powers of the circuit court. The intermediate appellate court agreed with the chancellor that a circuit court, when considering divorce, alimony or annulment matters, lacks jurisdiction to grant injunctive relief, but reversed the trial court's determination that it was similarly without authority to enforce its orders by way of contempt.[2]

On either one of two grounds, shortly to be explained, we exhibit disagreement with the trial court's conclusion that a circuit court, when sitting in equity to consider divorce, alimony or annulment matters, possesses no authority to utilize that court's contempt or injunctive relief powers as enforcement tools. Likewise, we register our disagreement with the Court of Special Appeals' determination, expressed initially in *Kapneck v. Kapneck,* 31 Md. App. 410, 356 A.2d 572 (1976), and now again in the present case, that a circuit court had no authority by way of injunction to enforce orders of the type entered in this case in divorce and related actions.

---

2. Justification for this distinction between contempt and injunction was not further analyzed, other than to state that the separation agreement,

containing the provision disposing of their residence, was approved, ratified and incorporated into their decree of divorce. This being so, then without question the matter is not necessarily one of specifically enforcing an agreement between the parties, which the court can do, but it is also an issue of enforcing the court's own decree. *See, for example,* Lewis v. Lewis, 256 Md. 45, 259 A.2d 246 (1969), Kemp v. Kemp, 287 Md. 165, 411 A.2d 1028 (1980), and cases cited therein.

Mr. Winston apparently conceded in the intermediate appellate court the existence of the contempt power in this type of equity proceeding, and did not cross-appeal from that court's just-mentioned disposition of this facet of the litigation.

However, preliminarily to explaining why we reach these conclusions, it may be helpful to the reader to set out the intermediate appellate court's holding in *Kapneck,* as both of the lower judicial tribunals, when ruling in this case, relied on that case to justify their decisions. In *Kapneck* it was determined that under section 3-603 (a) as it then existed in the Courts Article of the 1974 Code, which granted to the courts of equity jurisdiction in divorce related matters,[3]

> [an] equity court ... [did not sit] in the exercise of its general and ordinary equitable jurisdiction but as a divorce court, and therefore, ... it was governed by the rules and principles established in the ecclesiastical courts of England. It did not enjoy its usual equity powers. Since the ecclesiastical courts did not have authority to issue an injunction like the one here [(*ex parte pendente lite* order enjoining husband from harassing wife and minor children)], under the firmly established law of this State, neither did the court below. [*Id.,* 31 Md. App. at 419, 356 A.2d at 577-78.]

We now explain our reversal of the present case.

### (i)

First of all, we state that the simple refutation of the Court of Special Appeals' determination in this case that the circuit court sitting in equity to consider this divorce matter possessed no authority to issue an appropriate injunction under Rule 685 to enforce the provisions of its decree was

---

**3.** Section 3-603 (a) provided:

A court of equity has jurisdiction in an action for divorce, alimony, or annulment of marriage. The court shall hear and determine a case of alimony in as full and ample manner as such case could be heard and determined by the Ecclesiastical Courts of England.

Jurisdiction over divorce matters was originally conferred on the equity courts of this State in 1842 by ch. 262 of the Laws of 1841. The right to hear and consider questions of alimony dates back even further, at least to the passage of chapter 12 of the 1777 Laws.

provided by the General Assembly when it enacted chapter 221 of the 1977 Laws specifically razing the *Kapneck* holding. That enactment which was codified as a part of Courts Article (Md. Code, 1974, 1977 Cum. Supp.), section 3-603, reads:

§ 3-603. *Divorce and annulment.*

(a) *In general.* — A court of equity has jurisdiction in an action for divorce, alimony, or annulment of marriage. The court shall hear and determine a case of alimony in as full and ample manner as such case could be heard and determined by the ecclesiastical courts of England.

(b) *Injunction.* — A court of equity sitting in an action for divorce, alimony, or annulment, in addition to exercising all the powers of a court of equity, may issue an injunction to protect any party to the action from physical harm or harassment.

(c) [(Authorized determination or division of parties' personal property, but this subsection is not relevant in this litigation).][4]

It is suggested that this overturning of the *Kapneck* holding is limited to permitting an injunction in a divorce, alimony or annulment action only if deemed necessary by the court "to protect a party to the action from physical harm or harassment." We disagree.

It is now axiomatic that in considering the breadth or other meaning of a statute, the intention of the General Assembly will govern, and when design and direction are

---

4. This statute was amended in 1978 (now codified as section 3-603 and sections 3-6A-01 through 3-6A-07 of the Courts Article (1974, 1980 Repl. Vol.)) by chapter 794 of the Laws of that year as a part of a legislative plan to grant certain courts of this State the authority to make monetary awards and provide for disposition and use of property in conjunction with a divorce or annulment. By this amendment, § 3-603 (b) was modified so as to delete "in addition to exercising" and substitute in its place "has," as well as to add "and" before the word "may" in the concluding clause. Chapter 794 by its terms applies only to cases filed after January 1, 1979, and thus is of no consequence here.

plainly and unambiguously expressed by that legislative body, the courts of this State may do no more than apply it.

It is our view that a fair reading of section 3-603 as enacted by chapter 221 of the 1977 Laws, and particularly subsection b of that enactment (where it provides that "in addition to exercising *all* the powers of a court of equity," the court "may issue an injunction to protect any party to the action from physical harm or harassment" even when based on a single incident, such an injunction not being the type authorized as an enforcement tool by Rule 685), will demonstrate that the General Assembly was unambiguously endowing the equity court sitting in divorce, alimony and annulment proceedings with all the general powers normally exercised by that court in other matters. In addition, the enactment specifies that this authority is extended so as to encompass the right to enjoin a party in a domestic relations proceeding from physically harming or harassing another party. For those, however, who with this explanation still retain lingering doubts as to the meaning of chapter 221, their uncertainty should completely evaporate when the enacted portion of the statute is read in the light of its preamble. *Dillon v. State,* 277 Md. 571, 583, 357 A.2d 360, 367-68 (1976) (preamble may be resorted to as an aid in construction of statute). Commendably, the General Assembly has made clear the enactment's scope by including as a part of chapter 221 a preamble delineating its purpose. It reads:

> Whereas, it has been universally believed by the bar and bench that courts sitting in actions of divorce, alimony, or annulment have ordinary equity powers.
>
> However, in the case of Kapneck v. Kapneck, 31 Md. App. 410 (1976), the Court of Special Appeals, citing prior decisions of the Court of Appeals, stated, "In divorce proceedings the court sits, not in the exercise of its ordinary equity jurisdiction, but as a divorce court and is governed by the rules and principles established in the ecclesiastical courts in

England so far as they are consistent with the provisions of the Maryland Code." In reaching this decision, the Court prohibited the issuance of an injunction in a situation where most courts had previously acted. The general effect of this decision is that the courts are now without the authority to apply rules and principles and provide remedies generally thought to be in their power to exercise.

Prior to the Kapneck decision, the Legislature believed that divorce courts had the powers of equity courts and therefore did not enact many proposals which would have conferred on divorce courts specific equity powers.

Since "the power of the courts over divorce suits is derived entirely from the statutes" (Kapneck at 415), the General Assembly is indicating, by the passage of this Act, its intent to confer upon the courts in actions of divorce, alimony, or annulment not only those powers inherent to the ecclesiastical courts of England, but also the powers of general and ordinary equitable jurisdiction.

Consequently, we hold that section 3-603 of the Courts Article (1974, 1977 Cum. Supp.) confers "upon the courts in actions of divorce, alimony, or annulment, not only those powers inherent to [the] ecclesiastical courts of England, but also the powers of general and ordinary equitable jurisdiction." [5]

Although this case was initially filed on April 22, 1977, one week before chapter 221 as an emergency enactment became effective on April 29, there can be no doubt that its provisions are applicable to the present litigation. This follows since in this case not only was the contempt and injunction relief request filed after the effective date of the enactment, but both the separation agreement of May 15, 1978, and the divorce decree incorporating that agreement

---

5. Obviously, this ruling has equal application to § 3-603 as it was amended by chapter 794 of the 1978 Acts, presently codified in the 1980 replacement volume of the Courts Article. *See supra,* note 4.

of November 13, 1978, postdated the enactment. Our decisions point out that where, as here,

> the effect of the statute is not to obliterate existing substantial rights but affects only the procedure and remedies for the enforcement of those rights, it applies to all actions whether accrued, pending or future, unless a contrary intention is expressed. Statutes which do not destroy a substantial right, but simply affect procedure or remedies, are not considered as destroying or impairing vested rights, for there is no vested right in any particular mode of procedure for the enforcement or defense of the right. [*Kelch v. Keehn,* 183 Md. 140, 144, 36 A.2d 544, 545 (1944).]

See *St. Comm'n on Human Rel. v. Amecom Div.,* 278 Md. 120, 123-24, 360 A.2d 1, 3-4 (1976); *Luxmanor Citizens v. Burkart,* 266 Md. 631, 644-45, 296 A.2d 403, 410 (1972); *Janda v. General Motors,* 237 Md. 161, 168, 205 A.2d 228, 232-33 (1964); *Richardson v. Richardson,* 217 Md. 316, 320, 142 A.2d 550, 553 (1958); *Ireland v. Shipley,* 165 Md. 90, 98, 166 A. 593, 596-97 (1933). As chapter 221 provided only a new method of enforcement (if this method did not already exist), it deprives appellee of no property or right in an existing contract, and we perceive no vested right being withheld from him by the application of that statute in this case.

(ii)

The alternate reason why the decision of the Court of Special Appeals here must be reversed springs from our conclusion that *Kapneck v. Kapneck, supra,* insofar as it indicates that the equity courts of this State in considering divorce, alimony and annulment matters lacked their ordinary enforcement powers, did not express the then correct Maryland law. Consequently, we would reach the earlier announced result even had chapter 221 of the 1977 Laws not been enacted.

It is true, as the Court of Special Appeals mentioned in *Kapneck,* this Court has in a number of prior decisions stated that when in 1841 jurisdiction was conferred on the circuit courts sitting in equity to adjudicate divorce and related matters, these actions were not to be conducted by the court in "its ordinary equity jurisdiction but as a divorce court . . . governed by the rules and principles established in the ecclesiastical courts of England so far as they are consistent with the provisions of the Maryland Code." *Id.,* 33 Md. App. at 417-18, 356 A.2d at 576-77 (quoting *Gold v. Gold,* 191 Md. 533, 537, 62 A.2d 540, 542 (1948)). We have no occasion here to consider retreating from that statement, but subsequent happenings require an addition to its last clause: "and the Maryland Rules of Practice and Procedure adopted by the Court of Appeals pursuant to its rule making power granted by Article IV, section 18 of the Maryland Constitution." The addition is significant in the case now before us because this Court utilized that constitutional authority and adopted, effective January 1, 1957, a comprehensive set of practice and procedure rules which, by direction of their promulgating order, are "for the governance of the Courts of this State and of all parties and their counsel in all actions and proceedings therein . . . [and are to] be applicable to all actions . . . instituted on or after that date." Among these rubrics, made applicable in divorce, alimony and annulment actions by Rule 1 a 1,[6] is Rule 685 a which in full reads:

---

**6.** Rule 1. Scope of Rules . . . . . . . . . . . . . . . . . . . . . . Gen'l.
a. *Numbering as Descriptive of Scope.*

Except as otherwise expressly provided or necessarily implied:
   1. Chapters 1, 100-600.

The Rules in Chapter 1 apply to all procedure in courts of this State including the Court of Appeals and the Court of Special Appeals, but not the District Court.

\* \* \*

The Rules in Chapters 100-600 bearing numbers of which the last two digits constitute numbers between 70 and 99, inclusive, apply to procedure in equity only.

\* \* \*

The Rules in Chapters 1, 100-600 apply to the Special Proceedings dealt with in Chapter 1100 [(which includes Subtitle S (Divorce, Annulment, and Alimony)).|

> The court may, for the purpose of executing a decree, or to compel the defendant to perform and fulfill the same, issue attachment of contempt, attachment with proclamations and sequestration against the defendant, and may order an immediate sequestration of the real and personal estate and effects of the defendant, or such parts thereof as may be necessary to satisfy the decree and clear the contempt, or may issue a *fieri facias* against the lands and tenements, goods. and chattels of the defendant, to satisfy the said decree, or may issue an attachment by way of execution against the lands, tenements, goods, chattels and credits of the defendant, to satisfy the said decree; *or the court may cause, by injunction, the possession of the estate and effects whereof the possession or a sale is decreed, to be delivered to the plaintiff, or otherwise, according to the import of such decree, and as justice may require.* (Emphasis supplied.)

In the case before us, the trial court incorporated the provisions of the marital settlement agreement into its decree. Thus, that portion of the understanding stating the parties' jointly owned home was to become the sole property of the wife is enforceable as a part of the decretal order, *Kemp v. Kemp,* 287 Md. 165, 175, 411 A.2d 1028, 1034 (1980), and as such through Rule 1 a 1, may be enforced in any appropriate manner authorized by Rule 685, including injunction.[7] Moreover, the decisions of this Court for more than a century have consistently applied the near identical provisions of the ancestor to our Rule, last codified in Code (1951), Art. 16, § 222 (which that Rule superceded), in the context of the enforcement of divorce related decrees and orders. *E.g., Reichhart v. Brent,* 247 Md. 66, 71, 230 A.2d 326, 328 (1967);

---

**7.** In this regard, we note that while Rule BB71 c of the BB Subtitle contained in Chapter 1100 of the Maryland Rules (pertaining generally to injunctions) states that it shall not govern injunctions issued in "divorce, alimony, support of wife or child, custody of child or annulment of marriage" actions, it in no way purports to interfere with the right of the court to issue such injunctions if otherwise authorized.

*Fairbank v. Fairbank,* 169 Md. 212, 220, 181 A. 233, 236 (1935); *Roberts v. Roberts,* 160 Md. 513, 523-24, 154 A. 95, 99 (1931); *Snyder v. Snyder,* 159 Md. 391, 401, 150 A. 873, 877 (1930); *Dickey v. Dickey,* 154 Md. 675, 680-81, 141 A. 387, 389-90 (1928); *Mann v. Mann,* 144 Md. 518, 526, 125 A. 74, 76-77 (1924); *Stewart v. Stewart,* 105 Md. 297, 303, 66 A. 16, 18 (1907); *Gechter v. Gechter,* 51 Md. 187, 190 (1879); *Ricketts v. Ricketts,* 4 Gill. 105, 109-10 (1846). To hold other than we do here would necessarily mean that the rules of practice and procedure existing in this jurisdiction, with the exception of those contained in subtitle S of Chapter 1100 (pertaining to divorce related proceedings), which were so carefully honed to insure a fair and expeditious determination of disputes in all actions and proceedings in the courts of this State, would have no application to divorce related matters which represent such a substantial body of the litigation considered yearly by our courts. No such result was intended.

> *Judgment of the Court of Special Appeals vacated and case remanded to that court with instruction to issue a mandate consistent with the views stated in this opinion.*
>
> *Costs to be paid by respondent Herbert Saul Winston.*