## Margaret E. Cooley, Appellee, v. Vernon P. Cooley, Appellant.

### Gen. No. 31,241.

1. DIVORCE—*subsequent acts as affecting right to alimony.* A wife who obtains a divorce from her husband on the ground of his adultery does not lose her right to alimony by her subsequent moral derelictions.

2. APPEAL AND ERROR—*appeal from order as not appeal from later order fixing a condition to first appeal.* An appeal from an order in a proceeding to modify alimony payments but not from the later order fixing as a condition of appeal the payment of the respondent's costs, does not allow the petitioner to review in the Appellate Court the chancellor's making such condition to an appeal.

Cooley v. Cooley, 244 Ill. App. 488.

Appeal by defendant from the Superior Court of Cook county; the Hon. OSCAR HEBEL, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1926. Affirmed. Opinion filed June 13, 1927.

HENRY O. NICKEL, for appellant; DANIEL S. WENTWORTH, of counsel.

BROWN, FOX & BLUMBERG, for appellee; JACOB LOGAN FOX and KARL EDWIN SEYFARTH, of counsel.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

On June 28, 1923, in the superior court of Cook county, a decree of divorce was entered in favor of Margaret E. Cooley against Vernon P. Cooley, based on proof of his adultery. The decree provided, among other things, that he should pay to her, as and for permanent alimony and maintenance, the sum of $100 for each and every month thereafter, commencing on the 19th day of June, A. D. 1923, and payable monthly, in advance, until the further order of the court. About two years and seven months afterwards, on February 1, 1926, in the same cause, Vernon P. Cooley made a motion, supported by a verified petition, that an order be entered discontinuing the monthly payments of alimony, and that the decree of June 28, 1923, to that extent, be vacated and annulled.

Pursuant to an issue being made by the petition, an answer of Margaret E. Cooley as respondent, and the replication of the petitioner, and after the taking of testimony and a hearing before the chancellor, an order was entered on April 6, 1926, which—after reciting, among other things, that the income of the defendant had been greatly reduced since the rendition of the decree of June 28, 1923—provided that from and after February 1, 1926, the defendant should pay to the complainant, as permanent alimony and mainte-

nance, the sum of $50 per month, payable on the first day of each month, in advance, in lieu of the sum of $100 per month, as directed in and by the decree of June 28, 1923, such payments to be made until the further order of the court. This appeal is from the order of April 6, 1926.

It is the theory of the petitioner, Vernon P. Cooley, that, on October 19, 1924, and January 20 and April 7, 1925, the respondent, Margaret E. Cooley, was guilty of such acts of misconduct that she thereby forfeited all rights to any alimony granted under the decree of June 28, 1923.

It is the theory of the respondent (1) that the petitioner failed to prove, by a preponderance of the evidence, the allegations of the petition concerning the respondent's misconduct, and (2) that even if she were guilty of the misconduct charged in the petition, it was not sufficient to deprive her of her rights to alimony.

(1) The respondent's alleged misconduct. After the entry of the decree of divorce, the respondent lived in a cottage at Lake Wawasee, Kosciusko county, Indiana. The petitioner undertook to prove, by the testimony of five witnesses, three of them police officers, and two of them deputy sheriffs, that the respondent, on the three dates above mentioned, was guilty of certain misconduct.

The first date is that of October 19, 1924. On the evening of that day, the respondent and one Fisher, a caretaker employed by her and one of her neighbors, while returning from South Bend, Indiana, in an automobile which belonged to Fisher, were stopped and taken to the police station. Fisher was charged with intoxication, and with driving an automobile while in that condition. The respondent was detained at the police station for the rest of the night, and in the morning allowed to leave. One Quick, a police officer, who arrested both Fisher and the respondent, testified

that her talk was incoherent, and that she smelt of liquor; that her clothes were in a disorderly condition; that she used profane language, and called him a vile name; that after he had questioned her at the station, she was booked and placed in a cell.

One Hummel, a police officer, who was night captain, testified that on the night in question, the respondent was brought in, for intoxication, by Quick; that she staggered and her breath smelt of liquor; that her clothes and hair were disarranged; that she said she had been drinking wine; that after talking with her, he ordered her and Fisher locked up; that just before she was locked up, she said that if she were arrested and locked up it would interfere with her drawing alimony, and that she would lose her $100 a month.

The evidence of the respondent is that on the occasion in question, she had not drunk any intoxicating liquor, was not intoxicated, and did not use any profane or vulgar language.

The second date is that of January 20, 1925. In the morning of that day, between one and two o'clock, Quick and one Snavely, a police officer, were detailed to make an investigation. They went out and found Fisher and the respondent, and a Mrs. Jackson, in an automobile, returning from South Bend, Indiana. It is the evidence of Quick that they stopped the automobile, and he took Fisher with him to the police station, and Snavely took the two women to the station; that at the station the respondent stated that all three of them had been drinking wine. It is the evidence of Hummel, a police patrolman, that he saw all three of them at the station, and that the respondent said they had been drinking wine, and that the automobile had been in a collision with a street car. It is the evidence of Snavely that he went out with Quick, and, after trailing the automobile in which the respondent, Fisher and a woman named Mrs. Jackson, were, that officer Quick took Fisher in the police car to the sta-

tion, and he, Snavely, drove the two women back in Fisher's automobile; that when the Fisher automobile was stopped, Fisher was on the front seat, driving, and the respondent and Mrs. Jackson were in the rear seat; that the women's clothes and their hair were mussed up; that the respondent asked him and Quick if they were looking for "booze"; that to him, Snavely, it looked like a booze party.

The respondent testified that nothing was said about liquor; that they were not asked if they had drunk anything; and that nothing was said about liquor on their breath.

The third date is that of April 7, 1925. On April 7, 1925, towards midnight, one Drake, a Federal agent, Pittinger, a police officer, Maloy, sheriff of Kosciusko county, and one Banks, deputy sheriff, entered the cottage of the respondent, under authority of a search warrant. It is the evidence of Maloy, the sheriff, that they found Fisher and the respondent asleep in the same bed; that the other officers, upon searching, found some moonshine; that the respondent called them vile names; that he smelt liquor on the respondent's breath; that she would try to get hold of them, and would dance and curse them, and would break into a laugh; that she was arrested and was tried in the circuit court of Kosciusko county, being charged, with William Fisher, with fornication. Banks, substantially, corroborated the evidence of Maloy. He also testified that he found two quarts of whisky that the respondent said one George had brought to her; that on the way from the cottage to the city, the respondent conducted herself in a very disorderly way.

On cross-examination, he testified that Pittinger found three pints of moonshine, in addition to what he, the witness, found.

On behalf of the respondent, it was shown that in the criminal case for fornication, based on evidence

pertaining to this particular raid, a jury found her not guilty of the offense charged.

The respondent testified, as to her alleged misconduct on April 7, that there was no intoxicating liquor on the premises, and denied that she ever had illicit relations with Fisher.

Considering the evidence of Quick and Hummel as to the alleged misconduct on October 19, the evidence of Quick and Snavely as to the alleged misconduct on January 20, and the evidence of Maloy, the sheriff, and Banks, the deputy sheriff, as to the alleged misconduct on April 7, we are impelled to the conclusion, notwithstanding the categorical denials of the respondent, that it was proven, by a preponderance of the evidence, that the respondent was guilty of illicit relations with Fisher, and of drunkenness and disorderly conduct.

Although quite a volume of testimony was taken before the chancellor on the subject of her alleged misconduct, it is our opinion that he did not undertake definitely to pass upon whether it proved illicit relations, drunkenness and disorderly conduct, but held that whether such misconduct was proven or not, she was still entitled to alimony.

The question then arises, upon this review, whether proof of such misconduct extinguishes her right to alimony. We do not think it does. Just what quantity and quality of misconduct will do so, the decided cases do not scientifically set forth. In *Durrell v. Durrell,* 211 Ill. App. 282, the court said, "A decree for the payment of alimony is properly changed so as to discontinue further monthly instalments where it appears that the wife is leading a life of prostitution." In *Cole v. Cole,* 142 Ill. 19, where it was admitted, by demurrer, that the wife, after the divorce, had been guilty of adultery, it was held that that did not prevent her from being entitled to continuing alimony. The court in that case said that, under certain circum-

stances, which are there mentioned, it might be, "unconscionable to compel the husband, by his daily labor, to support his divorced wife in idleness and prostitution. Not only reasons of justice, but authority, would seem to justify the court, in such a case, in the exercise of its general chancery powers, to modify or revoke its former order."

There seems to be no doubt but that it is the law in this state that a woman who obtains a divorce from her husband on the ground of adultery, thereafter owes to him no greater duty to lead a pure and virtuous life than she owes to society generally; and that a claim by her upon him, under an order for the payment of alimony, which is, in and of itself, merely a pecuniary matter, is not in any way affected by what may be called, the moral quality of her post-divorce conduct. *Cole v. Cole,* 35 Ill. App. 544, affirmed in *Cole v. Cole,* 142 Ill. 19; *Rang v. Rang,* 211 Ill. App. 385; *Smith v. Johnson,* 321 Ill. 134.

Counsel for the petitioner cite the following Illinois cases: *Spitler v. Spitler,* 108 Ill. 120; *Balswic v. Balswic,* 179 Ill. App. 118; *Hickling v. Hickling,* 40 Ill. App. 73; *Zimmerman v. Zimmerman,* 242 Ill. 552; *Rybakowicz v. Rybakowicz,* 290 Ill. 550, and *Dorian v. Dorian,* 298 Ill. 24. Considering the facts in the present case, however. we do not find that any of those cases is in point.

In the instant case, where the evidence shows general social misconduct which bears no relation to, and affects the petitioner in no pecuniary way, it is not sufficient, in and of itself, to justify putting an end to the respondent's right to alimony, and it may be added, by way of emphasis, especially is that true when, as here, the divorce was granted not on account of her fault, but on account of her husband's adultery.

It is urged for the petitioner that law and morals are coterminous; but though the tendency of the law

is in that direction, it is not yet wholly true. Pound, in Law and Morals (1924), p. 41, says,

"Legal precepts sometimes are, and perhaps sometimes must be, at variance with the requirements of morals. Yet such a condition is not something of which the jurist is to be proud. It is not a virtue in the law to have it so. Nor are such conditions required, in a certain number, in order to demonstrate that law is one thing and morals another. So far as such things are more than historical anomalies that ought to be pruned away, they arise from inherent practical limitations upon effective legal action, which make it impossible or inexpedient in a wise social engineering to attempt to secure certain claims or enforce certain duties to the extent that might be desirable from a purely ethical standpoint."

It is further contended that the chancellor erred in conditioning the appeal from the decree upon the payment, by the petitioner to the respondent, of the sum of $375, as and for her costs and expenses in the defense of this appeal.

The record shows that on April 6, 1926, the chancellor entered an order that the petitioner pay $50 instead of $100 a month as alimony; that on April 12, 1926, upon a hearing, exceptions of the petitioner to the entry of the order of April 6, 1926, were overruled; that the petitioner then prayed an appeal to the Appellate Court; that that appeal was allowed, upon the petitioner "filing an appeal bond within thirty (30) days * * * in the sum of fifteen hundred dollars ($1500.00), to be approved by the court, and a certificate of evidence within sixty (60) days from the date hereof, and upon * * * Vernon P. Cooley paying within said 90 days from the date hereof to * * * Margaret E. Cooley, the sum of three hundred seventy-five ($375.00) dollars, as and for her costs and expenses in the defense of said appeal''; that on May 4, 1926, an appeal bond was approved by the chancellor

and duly filed; that in the appeal bond the conditions are recited as follows:

"That whereas, the said Margaret E. Cooley did, on the 6th day of April, A. D. 1926, * * * recover an order against the above bounden Vernon P. Cooley for the sum of $50.00 * * * per month, as permanent alimony, besides costs of suit; from which said judgment * * * the said Vernon P. Cooley has prayed for, and obtained an appeal to the Appellate Court * * * .

"*Now, therefore,* if the said Vernon P. Cooley shall duly prosecute his said appeal with effect, and moreover pay the amount of the judgment, costs, interests and damages rendered, and to be rendered, against him in case the said judgment shall be affirmed in said Appellate Court, then the above obligation to be void, otherwise to remain in full force and effect."

With the record in that condition, it is quite obvious that the appeal was taken from the order of April 6, and not from the order of April 12. A somewhat similar situation was recently considered by this court in the case of *Rosenfeld v. Horwich,* 221 Ill. App. 304. As the record stands, it does not appear that the respondent made any objection to the condition attached to the giving of the bond, that is, that the petitioner should pay the respondent in 90 days the sum of $375, as and for her costs and expenses in the defense of the appeal. The appeal was taken only from the order of April 6, and the bond so recites. Such being the situation, we are bound to infer that the failure to mention the order of April 12, 1926, clearly indicates that no objection or exception was taken by the petitioner to that order. We do not know, from what the record shows, but that the petitioner was entirely satisfied with the provision that was created as a prerequisite to an appeal. In our opinion, the failure of the petitioner to appeal from the order of April 12, 1926, precludes

him from raising any objection to that order on this appeal.

For the reasons stated, the order of the chancellor will be affirmed.

*Affirmed.*

O'CONNOR and THOMSON, JJ., concur.