GRETNA S. WILLIAMS *v.* JOHN D. WILLIAMS.
[No. 41, April Term, 1928.]

*Decided June 21st, 1928.*

· The cause was argued before Bond, C. J., Urner, Offutt, Digges, and Parke, JJ.

*David Ash,* for the appellant.

*W. Mason Shehan* and *Webster S. Blades,* with whom were *Charles J. Butler, Francis E. Pegram, Jr., Seth, Shehan & Marshall,* and *Blades, Rosenfeld & Frederick,* on the brief, for the appellee.

Urner, J., delivered the opinion of the Court.

By a decree of the Circuit Court of Baltimore City, dated October 15th, 1926, the parties to this appeal were divorced *a mensa et thoro,* at the suit of the wife, on the ground of abandonment. The marital domicile was in Easton, Maryland, where the husband still resides, but since the separation the wife has been living in Baltimore. On July 1st, 1927, the husband filed, in the Circuit Court for Talbot County, the pending bill for an absolute divorce on the ground of the wife's alleged adultery. A divorce *a vinculo matrimonii* was decreed upon evidence which convinced the court below that the charge against the wife was well founded. The principal questions which we are asked to determine on this appeal are: (1) Whether the Circuit Court for Talbot County had jurisdiction to entertain the suit for an absolute divorce, notwithstanding the fact that a decree for a partial divorce of the parties, and for permanent alimony, had been

passed by the Circuit Court of Baltimore City. (2) Whether the abandonment of the appellant by the appellee disentitles the latter to assert subsequent infidelity of his wife as a ground for divorce. (3) Whether the testimony justifies the conclusion that the appellant was guilty of the marital offense alleged in the bill of complaint.

To the question of jurisdiction the following Code provisions are pertinent: "The courts of equity of this State shall have jurisdiction of all applications for divorce; and any person desiring a divorce shall file his or her bill in the court, either where the party plaintiff or defendant resides; * * *." Article 16, section 37. "When a bill prays for a divorce *a vinculo matrimonii*, the fact that the parties have been divorced *a mensa et thoro* shall not be taken to interfere with the jurisdiction of the court over the subject, * * *." Article 16, section 41.

In *Schwab v. Schwab*, 93 Md. 385, it was said: "An action for a divorce *a vinculo* is in every respect different from that for a divorce *a mense et thoro*. They are both statutory proceedings and they proceed upon different sections of the statute, are founded upon a different state of facts and aim at entirely different results." This language was quoted in the opinions in *Stewart v. Stewart*, 105 Md. 302, and *Miller v. Miller*, 153 Md. 213. It was held in *Schwab v. Schwab* that a supplemental bill charging adultery could not be filed in a case where the original bill sought a partial divorce on grounds not constituting cause for a divorce *a vinculo*, and that such a cause could only be asserted in a separate suit. In *Stewart v. Stewart* it was decided that a partial divorce could not be granted under a bill alleging adultery as the sole ground of relief, since the statute authorizes only an absolute divorce for that cause. The opinion in *Miller v. Miller* discusses the principle of the *Schwab* and *Stewart* cases, and finds it consistent with a conclusion that a divorce *a mensa* for abandonment could be granted, as prayed in the bill, although the evidence showed that the separation had continued for more than the statutory period of three years,

and thus afforded ground upon which an absolute divorce might be sued for and obtained.

The jurisdiction of the Circuit Court of Baltimore City, which the appellant invoked for the purposes of her bill for a limited divorce, could not, upon the allegations and facts, have included authority to grant an absolute divorce even upon the ground of abandonment, as the final separation of the parties was stated in the decree to have occurred on a date which was less than three years prior to the institution of the suit. The allegation of adultery in the present case, and the evidence offered in support of the charge, are directed to a period subsequent to the decree passed in the other proceeding. As the decree of the Circuit Court for Talbot County was concerned with a subject and form of relief to which the judicial power of the Circuit Court of Baltimore City could not be directed in the former case, the prosecution and result of that suit can have no effect upon the jurisdiction exercised in the passage of the decree which is now under review.

The question whether the decree of divorce *a mensa et thoro* in favor of the appellant, and the abandonment mentioned in that decree, prevents an absolute divorce in this suit on the ground of her adultery, if the evidence proves the charge, is answered in the negative by the opinions delivered in *Appeltofft v. Appellofft,* 147 Md. 603; *Pryor v. Pryor,* 146 Md. 683, and *Foxwell v. Foxwell,* 118 Md. 471.

It was admitted by the appellant and the corespondent in their testimony that the latter was a frequent visitor at the appellant's apartments, which consisted of an interior passage way, a combined living and bedroom, a kitchenette, and a bathroom. It was testified by the janitor of the building that, during the appellant's occupancy of the apartment, from early in January, 1927, until May 1st of the same year, the corespondent visited her there almost every night. There was no contradiction of that statement. The appellee having asked his brother to observe the appellant's conduct, and having been informed by him that she was receiving attentions from a male visitor, employed a detective, who, on the

14

night of April 23d, in company with the appellee, the brother just referred to, and a friend from Talbot County, went to the vicinity of the apartment building, as they testified, about half past nine o'clock, found the car regularly used by the corespondent standing in front of the building, and saw him come out and go away in the car about one o'clock. The following night the observation was renewed and again the corespondent, at one o'clock A. M., was seen to leave the appellant's apartment. A few nights later he was observed by the same witnesses to come from the appellant's rooms at 2:40 o'clock A. M. On each occasion the witnesses went to an area way behind the building to ascertain whether there was any light in the appellant's apartments, which were on the first floor, with the window of the living room overlooking the area way, but no lights could be discovered. In explanation of the occasional absence of light in the living room, the appellant and corespondent stated that it was extinguished there while they were having meals in the kitchenette. The detective testified that on the night of April 21st, when, unaccompanied, he made his first observation in pursuance of his employment in the case, the corespondent entered the appellant's apartment at 8.45 o'clock, left the building with the appellant at quarter past ten, and returned with her twenty-five minutes later, and that the corespondent, after coming out at half past twelve to turn out the parking light on his car, went back to the apartment and remained there until 8.50 o'clock the next morning. The janitor testified that he twice saw the corespondent's car standing in front of the apartment building when the witness came to attend to the furnace about 5.30 A. M., and that shortly after eight o'clock on those mornings the appellant and corespondent together left her rooms. On another day, according to the janitor's testimony, the corespondent left the appellant's apartment about an hour after her departure at 8.30 o'clock for her place of employment. On the night of April 29th, 1927, the appellee, one of his friends, and two detectives went to the apartments of the appellant at 10.45 o'clock, and, as they testified, after one of them had knocked four times

on the door, during a period of several minutes, the door was opened by the appellant and they immediately entered the living room, where they found the corespondent standing with his collar, coat, and shoes off, his clothes disarranged and his hair disheveled. The folding day-bed they described as being open and with its covers in a state of disorder. The light was turned on, they said, after the door was opened. One of the detectives told the corespondent that the appellant, with whom he was so intimately associating, was a married woman, and that the appellee, then present, was her husband. The corespondent said he understood the appellant was divorced. This being denied by the detective, the appellant said it was a partial divorce which she had procured, and she is quoted, without contradiction, as saying that such a divorce "gave her the right to do as she pleased." The interview closed with a statement by one of the detectives that "They had enough for the court," and the expression of a hope by the appellant that the appellee had "found what he is looking for"; and the investigating party then withdrew, the corespondent remaining, as he admits, until half past one or two o'clock, because, as he explains, of the appellant's nervous condition.

The appellee and one of his friends testified that on the night of May 27th, 1927, they saw the appellant and corespondent enter an apartment house and soon afterwards observed them disrobe at the uncurtained bay window of a lighted room on the third floor of the building. In view of the inherent improbability of such a careless exposure by persons who knew they were accused of an improper relationship, it is more difficult to reject their denial that they were involved in such an incident than to believe that the witnesses who testified in regard to it may have been mistaken as to the identity of the persons to whom their statement referred. But as the occasion was subsequent to the filing of the bill in this case, if an act of adultery was then committed by the appellant with the corespondent, it could not be made the basis of the present decree of divorce, and could only be considered as reflecting upon the charge of

misconduct occurring prior to the suit. *Carter v. Carter,* 139 Md. 265. For the purposes of our decision, the evidence referring to a later period may be ignored.

In regard, however, to the controlling facts and issue, the testimony of both the appellant and the corespondent, while asserting their innocence, admits a degree of intimacy between them which, under the circumstances, naturally suggests the probable existence of the illicit relations of which they were accused. The conceded terms of their associations verge so closely upon the material incriminating facts to which the witnesses for the appellee testified, as to encourage belief in the truth of that evidence and to make clearly unreasonable its rejection as unworthy of credence. Upon the proof in the case we find no reason to disagree with the conclusion reached by the lower court, with its superior opportunity to judge as to the credibility of the witnesses, that the charge in the bill of complaint has been sustained.

There was no error in any of the several rulings upon the admissibility of evidence to which the appellant excepted.

*Decree affirmed, with costs.*