SUSIE PIPER, complainant,

*v.*

JOHN PIPER, defendant.

[Decided December 21st 1934.]

*Messrs. Weinberger & Weinberger (Mr. Joseph J. Weinberger),* for the complainant.

*Mr. Edward Thomas Moore,* for the defendant.

CAMPBELL, A. M.

This matter is before me on petition for support and maintenance, *pendente lite,* of Susie Piper (hereinafter referred to as the petitioner), and of the child of the marriage, and counsel fees. Petitioner recently filed her bill for separate maintenance, alleging extreme cruelty, abandonment and refusal of defendant to support her and her child.

Authority for the relief sought by the bill is section 26 of the Divorce act (Revision of 1907—*2 Comp. Stat. 1910 p. 2038*), which provides:

"In case any husband, *without any justifiable cause* (italics are mine) shall abandon his wife or separate himself from her, and refuse and neglect to maintain and provide for her, it shall be lawful for the Court of Chancery to decree and order such suitable support and maintenance, to be paid and provided by the said husband for the wife and her children, or any of them, by that marriage, or to be made out of his property, and for such time as the nature of the case and circumstances of the parties render suitable and proper in the opinion of the court."

In the early part of 1933 petitioner filed her petition in this court for divorce, alleging adultery. Defendant answered, and also counter-claimed for adultery. On November 1st, 1933, Advisory Master Stafford advised a decree dismissing the petition and counter-claim. Embodied in the decree is the advisory master's conclusion that both parties were guilty

of adultery. Subsequently, petitioner appealed and defendant counter-appealed. The court of errors and appeals affirmed the decree as to each appeal. *Piper* v. *Piper, 116 N. J. Eq. 587; 174 Atl. Rep. 734.*

In the filed opinion of the advisory master he states: "The petitioner, under the facts in this case, being guilty of misconduct, did not come into court with clean hands and therefore is not entitled to affirmative relief from this court. Since both parties are guilty of matrimonial misconduct, they are *in pari delicto,* and no affirmative relief will be given to one as against the other." Section 28 of the Divorce act. Revision of 1907 (*2 Comp. Stat. p. 2040*).

The appeals were decided September 27th, 1934. Petitioner's affidavits declare that she promptly made conciliatory overtures, her first effort having been October 5th, 1934. Defendant's affidavit is evasive as to these overtures. His lack of frankness in this respect was undoubtedly designed to confuse and mislead the court. My conclusion is, however, that the overtures were proffered and that defendant repulsed them.

The acts of extreme cruelty, abandonment and refusal to support complained of are alleged by petitioner's bill to have occurred July 12th, 1932. The decree of dismissal in the divorce action adjudged her to have been guilty of adultery on the same day, or on the following day. The parties have lived separate since July 12th, 1932, and their mutual offenses have not been condoned.

Petitioner contends that, irrespective of both her and defendant having been adjudged guilty of adultery, the common law obligation of support resting upon a husband is a dual obligation; he owes it to his wife and he owes it to society; that that obligation persists and continues unless and until the defendant shall divorce her. She relies upon the rules laid down in the following cases: *Bates* v. *Bates, 2 N. J. Mis. R. 400; Van Osten* v. *Van Osten, Ibid. 897; White* v. *White, 87 N. J. Eq. 354; 100 Atl. Rep. 235.*

The *Bates Case, supra,* decided in 1924, gave me, at first blush, considerable concern because the rule therein laid down seemed to be wholly contradictory of and in direct con-

flict with those expressed by the court of errors and appeals, both prior and subsequent thereto. In the *Bates Case,* Vice-Chancellor Leaming stated: "I am unable to see how there can be any denial by.the court of the complainant's demand for support without overruling the court of errors and appeals, and that I never knowingly attempt. The court of errors and appeals has said, and said very emphatically, that the common law obligation of support resting upon a husband is a dual obligation; he owes it to his wife and he owes it to society, and that obligation, the court says, persists and continues * * * to use the exact language of the court * * * 'unless and until' the husband shall divorce her.

"In the overruled case, in which that comment was made by the court of errors and appeals, the woman had been admittedly living in open adultery with another man; the husband had not seen fit to procure a divorce from her, which he could have procured, and yet the court of errors and appeals determined that, unless and until he should procure a divorce from her, he must provide for her support. If a husband doesn't wish to provide for the support of his wife, it would seem that he must procure his divorce and thus terminate his common law obligation of support. Two early decisions in this state had been referred to in the overruled case, which held that a husband was not obliged to support his wife if she refused to live with him and share his home. As to those cases the court of errors and appeals intimated a disapproval by characterizing the rulings as *obiter dictum.* Now, that is the extent to which the court of errors and appeals has gone, as I interpret their views, and if their views are as I interpret them, Mr. Bates is liable for the support of his wife unless and until he can get a divorce from her by reason of misconduct on her part, such as refusal to live with him, constituting a desertion, or other misconduct, which under our statute may justify a divorce. So, I can't see how it is possible to deny to Mrs. Bates maintenance under the view of the law which the highest authority in this state defines as controlling in cases of this kind." The facts set forth in the opinion are meagre; nothing is disclosed that indicates the nature of the charges in Mrs. Bates'

bill nor the defense interposed by her husband's answer. Consequently, I resorted to an examination of the original pleadings.

In the opening paragraph of his opinion the vice-chancellor stated: "I still entertain the view that I suggested at the beginning of this hearing; that this case might very well have been determined on the pleadings, * * *." I agree with him; the bill and answer tell the whole story. Mrs. Bates alleges briefly: That about a year after the marriage her husband began to abuse and beat her; that she caused him to be indicted therefor, which resulted in his conviction; that sentence was suspended upon condition that he contribute to her support; that he paid said support money until about four years preceding the filing of the bill; that he then went to Williamsport, Pennsylvania, where he instituted divorce proceedings which he subsequently abandoned; that he had been "going around" with other women, pretending that he was either divorced or unmarried and complainant at one time saw him with a woman in Philadelphia; that at the time the divorce proceedings were pending in Williamsport, defendant was "going around" with a girl to whom it was reported he was engaged; that complainant has had no support from defendant during the past four years nor has he returned to her; and that defendant's desertion and abandonment were without justifiable cause.

Defendant's answer admits that his wife made the criminal complaint against him; that she thereupon refused to accept support from him or to live with him; it admits the Pennsylvania divorce proceedings; it denies that he had been "going around" with the women identified in the bill; it alleges that complainant had repeatedly refused support from him; it declares that complainant became cold and unsatisfied with married life, refused to cohabit with him and refused to prepare his meals; and that "counsel then and there advised the defendant that if his wife would not prepare the meals and cohabit with him, he was not compelled to live with her, and thereupon defendant * * * secured a boarding place which was with the entire consent and approval of the complainant."

The foregoing resume of the bill indicates conclusively that its gravamen was abandonment and failure to support. While extreme cruelty was inferred and adultery suspicioned, neither was, of course, required to be defended against because not individuated nor specifically pleaded.

Defendant's answer is in the nature of a general denial, and while it avers desertion there is nothing to indicate that his wife's conduct was a "justifiable cause" for defendant having abandoned and refused to support her. Because the vice-chancellor did not cite them it is, of course, impossible to identify with certainty the cases to which he refers as having been overruled by the court of errors and appeals. The *Bates Case* having been decided in 1924, the only elements of identification available are that the overrulings therein referred to did, obviously, precede that date, and that the case of *Whittle* v. *Schlemm, 94 N. J. Law 112; 109 Atl. Rep. 305*, decided by the court of errors and appeals in 1920, appears to bear all the earmarks of the matters to which the vice-chancellor referred; it seems to complete the gap as a matter of circumstance rather than coincidence. But that case related solely to articles of separation in which the *dum casta* clause was not included; the court held that without such provision the common law obligation of a husband to support his wife continued "unless and until" he procures a divorce from her: it asserted that the observation of the vice-chancellor as to certain cited cases was *dictum* because they were suits for maintenance, in each of which the defense of adultery was set up but failed of proof; it further observed that neither in *Maas* v. *Maas, 34 N. J. Eq. 113*, nor in *Perkins* v. *Perkins, 59 N. J. Eq. 515; 46 Atl. Rep. 173*, was there any adjudication in terms that adultery was a good defense in such suits, although it was treated as valid.

In *Bradbury* v. *Bradbury (N. J. Ch.), 74 Atl. Rep. 150*, on bill for maintenance, decided prior to the *Bates Case,* it was declared: "But now, adultery, if pleaded and proved, is a good defense to a bill for maintenance without a divorce being procured."

In *Howey* v. *Howey, 77 N. J. Eq. 591; 78 Atl. Rep. 696*, on bill for maintenance, also decided prior to the *Bates Case,*

the court of errors and appeals, in affirming the opinion of Vice-Chancellor Leaming, stated: "Neither a husband nor a wife is obliged to live with the other when the other has committed adultery or has by wrongful conduct brought himself or herself within the statutory meaning of extreme cruelty toward the other. Those conditions justify either spouse in separating himself or herself from the other, and as I read the decisions of the court of errors and appeals no other conditions operate as a justification. The Alimony act says that if a husband shall desert his wife without justifiable cause and fail to support her it shall be the duty of the court of chancery to award her alimony during such period as the desertion continues. *2 Gen. Stat. 1895 p. 1270 § 20.* The justifiable cause or causes are the causes to which I have referred."

From the facts appearing in the *Bates Case, supra,* it is evident that the decree was advised solely because it was shown that the abandonment and refusal to support were without justifiable cause. It is obvious, therefore, that so much of the vice-chancellor's opinion as was contrary to the rules previously laid down by the court of errors and appeals in *Bradbury* v. *Bradbury* and *Howey* v. *Howey, supra,* was a misinterpretation.

The *Van Osten Case, supra,* also cited by petitioner, is more easily disposed of. It is in nowise analogous to the matter *sub judice.* In the first place, it is a ruling on an application for alimony *pendente.* Secondly, as the opinion indicates, the action is founded on petition and counter-claim for divorce for the cause of desertion. The parties were still married at the time the opinion was rendered, and appear, from the facts disclosed, to have been mutual martyrs to their matrimonial flop. *White* v. *White, supra,* also relied upon by defendant, I will deal with later.

Defendant urges three reasons why petitioner is not entitled to the relief prayed for, namely: (1) The motion papers do not contain the necessary allegations and proofs; (2) petitioner comes into court with unclean hands, and (3) the abandonment, if any, by defendant was justified by petitioner's adultery. The deficiencies referred to in the first

reason have since been cured by the filing of proper allegations and proofs. In support of the second and third reasons he submits the following cases for consideration: *Bradbury* v. *Bradbury* (*N. J. Ch.*), *supra; Howey* v. *Howey, supra; Sabbarese* v. *Sabbarese, 107 N. J. Eq. 184; 146 Atl. Rep. 592; affirmed, 107 N. J. Eq. 192; 152 Atl. Rep. 323; Whittle* v. *Schlemm, supra; Thomas* v. *Flanagan, 99 N. J. Eq. 198; 132 Atl. Rep. 305.*

Neither party, however, has cited, nor do I find, any reported cases in this state in which a suit for separate maintenance has been adjudicated under the circumstances prevailing in the matter *sub judice;* where a husband and wife, as the result of their previous divorce proceeding, have each been adjudged guilty of matrimonial misconduct. Petitioner is, apparently, predicating her application on the theory that this court might be urged somehow to set off and balance against each other the mutual misconduct of herself and the defendant and thus leave her with all her original marital rights and claims unimpaired. No such principle exists in equity. The conclusions arrived at in this case must be based upon the meaning and application of the words "justifiable cause," amplified by application of the "clean hands" maxim.

In *White* v. *White, supra,* the wife's action for separate maintenance prevailed because it was held that, her husband having consented to or connived at her adultery, his subsequent abandonment of and refusal to support her was not such a "justifiable cause" as would relieve him of that obligation. Mr. Justice Black, speaking for the court of errors and appeals, stated that "justifiable" means warrantable, defensible; that a "justifiable cause" which will relieve the husband from his legal obligation to maintain and provide for his wife is a cause which he has not helped to create; a result that has not been produced, in part at least, by his own misconduct; an adultery of the wife, free from legal guilt or connivance on his part. Mr. Justice Black further stated that:

"She is still, in law, his wife, and has certain legal rights, one of which is a right of support from her husband, unless

it is cut off by the statute. In morals he cannot shield himself from the performance of that duty by his own wrongful conduct toward her which helped to bring about her unfaithfulness." See, also, *Cavileer* v. *Cavileer, 94 N. J. Eq. 160; 119 Atl. Rep. 101*. In the case at bar there was neither consent nor connivance upon the part of the defendant; there was no wrongful conduct of his which helped to bring about petitioner's adulterous act. Desertion, extreme cruelty and adultery are the "justifiable causes" in this state which will excuse a husband from maintaining and providing support for his wife. Any of these causes, if pleaded, is a good defense to a bill for separate maintenance. No obligation is imposed upon a husband to divorce his wife for any of these causes, in order to free himself from the duty to support her, if he prefers not to sue for divorce, but simply to defend himself against her suit for maintenance. *Bradbury* v. *Bradbury, supra; Howey* v. *Howey, supra; Sabbarese* v. *Sabbarese, supra.*

And now, applying the maxim, "He who comes into equity must come with clean hands:" This maxim is sometimes expressed: "He that hath committed iniquity shall not have equity." *Pom. Eq. Jur.* § *397.*

Petitioner being the *actor,* the burden of the maxim rests exclusively upon her; the force of the maxim cannot be applied to the defendant because the invocation of the court was not sought by him; he did not "come" into court * * * he was *brought* in. *Thomas* v. *Flanagan, supra.*

Mr. Justice Trenchard, speaking for the court of errors and appeals, in *Vulcan Detinning Co.* v. *American Can Co., 72 N. J. Eq. 387; 67 Atl. Rep. 339,* concisely defines the rule to be: "* * * 'unclean hands,' within the meaning of the maxim of equity, is a figurative description of a class of suitors to whom a court of equity as a court of conscience will not even listen, because the conduct of such suitors is itself unconscionable * * * *i. e.,* morally reprehensible as to known facts."

Equity assumes that when a suitor with unclean hands seeks its aid, he has been guilty of conduct in violation of the fundamental conceptions of equity jurisprudence, and,

consequently, refuses him all relief with reference to the transaction in question; it declares that whenever a suitor who, as instigator of an action seeking some remedy, has willfully violated conscience, good faith or other equitable principle in his prior conduct relating to the same transaction, then he will be repelled from the forum whose foundation is good conscience.

Petitioner's right to affirmative relief is based on the marriage status which she has iniquitously violated. The rule of "unclean hands" does not favor an assertion of marital obligations which is preceded by their violation. This being so, and it appearing that petitioner has been guilty of misconduct which is made a bar under section 26 of the Divorce act, *supra, i. e.*, "justifiable cause," I cannot see how it justifies or excuses her misconduct, or changes the nature of her act, or avoids the consequences thereof, or in any manner contributes an element of support to her cause of action for maintenance by alleging that the defendant, too, has been adjudged guilty of a similar violation. And, especially is it so where, as here, there is no claim by petitioner that the misconduct of the defendant, even as a moral influence, conduced to or mitigated the evil of her offense.

Of course, if the defendant were seeking affirmative relief the same rule would be applied to him that is being urged against petitioner. But he is not invoking the conscience of this court; the petitioner alone is seeking relief, and in my opinion the only material question relates to her adulterous act; she has shown neither a reason valid in conscience nor a legal right for the assistance which she seeks; nothing has been shown in this proceeding that relieves her of the responsibility of her own act. Where both are equally in the wrong, defendant holds the stronger ground.

In *Thorne* v. *Mosher, 20 N. J. Eq. 257,* the court held: "A party is not allowed to take advantage of an act done, or the omission to do it, where such act or omission was designedly caused by himself."

In *Neubeck* v. *Neubeck, 94 N. J. Eq. 167; 119 Atl. Rep. 26,* Mr. Justice Trenchard, speaking for the court of errors and appeals stated: "While the maxim, 'He who comes into

equity must come with clean hands,' has a very wide application, it has also its limitations. It does not repel all sinners from courts of equity, nor does it apply to every unconscientious act or inequitable conduct on the part of complainants. The iniquity which deprives a suitor of a right to justice in a court of equity is not general iniquitous conduct unconnected with the act of the defendant which the complaining party states as his ground or cause of action, but it must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought." The particular transaction in which petitioner is seeking relief in the matter *sub judice* is the previous divorce proceeding and in which she and defendant were declared to be *in pari delicto*.

Petitioner urges that it would create an anomalous situation to permit the marriage bond to remain undissolved and she not entitled to support. Not so. Having violated the marriage status without the collusion or connivance of her husband she is bound by the consequences of her act; the Divorce act, *supra*, as well as the construction placed thereon by the court of errors and appeals and this court, relieves the husband, as part compensation for his wife's wrongful conduct, of one of the essential elements of the marriage obligations imposed upon him, *i. e.*, his common law and statutory duty to support her. In this respect the court said, in *Lynde* v. *Lynde, 54 N. J. Eq. 473; 35 Atl. Rep. 641; affirmed, 55 N. J. Eq. 591; 39 Atl. Rep. 1114:* "Consummated marriage carries with it rights and duties which, so far as a true and faithful wife is concerned, can morally end only with the life of one of the parties. Her right to support and maintenance continued so long as it is just that she shall retain it."

We must not be misled by any supposed hardships of the case. The conduct of the defendant in this transaction justly excites our indignation. One's sympathies are naturally with the wife because she has, unfortunately, engulfed herself into a situation from which she cannot hope to escape during her lifetime or until defendant relents and takes her back. But we may not violate a single principle upon which equity is administered to vindicate the one and punish the other.

"The old cases," says Mr. Justice Story, "often gave relief both at law and in equity, where the party would otherwise derive an advantage from his iniquity. But modern doctrine has adopted a more severely just, and probably politic and moral rule, which is to leave the parties where it finds them, giving no relief and no countenance to claims of this sort." *1 Story Eq. Jur. § 298 note 2.*

This court determines it to be a settled principle of law in this state that when both husband and wife have been adjudged guilty of adulterous conduct, unaccompanied by condonation, collusion or connivance, a subsequent suit by the wife for separate maintenance will not avail against the husband's defense of justifiable cause.

In the divorce proceedings between these parties (*Piper* v. *Piper, supra*), it was decreed, among other things, that petitioner did not come in with "clean hands." She has not since become purged thereof. For the reasons herein stated I conclude that defendant's abandonment of his wife, and his refusal to maintain and provide for her, was for justifiable cause. An order will be accordingly advised dismissing her petition.

It is apparent that the order providing for the care and custody of the infant child of the parties, as well as visitation, advised by Advisory Master Stafford, and approved by the court of errors and appeals, has been changed by the defendant without order of this court. I will hear the parties as to this upon proper notice.