## COURSON *v.* COURSON

[No. 119, October Term, 1956.]

*Decided March 14, 1957.*

*Dissenting opinion filed March 27, 1957.*

*Motion for rehearing filed, March 28, 1957, denied May 3, 1957, and mandate of opinion modified.*

184

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Wallace Dann,* with whom were *Howard Calvert Bregel* and *Calvert Ross Bregel,* on the brief, for appellant.

*David D. Merrill* and *William J. Yarworth,* for appellee.

PRESCOTT, J., delivered the opinion of the Court.

By decree of the Circuit Court No. 2 of Baltimore City dated April 16, 1953, the appellant was divorced *a mensa et thoro* from the appellee and awarded permanent alimony at the rate of twenty-five dollars per week. Thereafter, the appellee instituted suit against her for a divorce *a vinculo matrimonii,* which the Chancellor granted but which was reversed by this Court on the grounds of recrimination. *Courson v. Courson,* 208 Md. 171, 117 A. 2d 850. In his bill, the appellee charged adultery on the part of the appellant, which this Court determined as a fact to be true. Upon receipt in the lower Court of the mandate of this Court, the appellee petitioned for a modification of the alimony allowed the appellant in the *a mensa* decree on the ground that the adultery proved in the *a vinculo* case was a good and sufficient reason for modification of the decree awarding her alimony. The Chancellor considered the matter and suspended the alimony subject to the further order of the Court.

The appellant contends (and the appellee denies) that the alimony set by the Chancellor in the decree which granted her a divorce *a mensa* is *res judicata;* and, although conceding the power and authority of the Courts in Maryland to modify their *a mensa* decrees relative to permanent alimony, she

claims the Courts may do so only when the pecuniary faculties of the husband or the needs of the wife have changed since the entry of the decree, and the Chancellor had no right to consider the fact that she had committed adultery in modifying the decree that granted her alimony.

As this seems to be the first time this question has been directly presented in this jurisdiction, it may not be inappropriate to briefly outline the history of alimony as it has been dealt with here, as shown by the legislative enactments and judicial decisions. From the time of *Foliamb's* case (44 Eliz.), 3 Salk. 138, (about 1602) until the divorce act of 20 and 21 Vict. ch. 85 (about 1857), no absolute divorce could be judicially granted in England. The only legal separation recognized was a divorce from bed and board upon a decree of the Ecclesiastical Court. These Courts, as an incident to the decree, granted alimony, temporary or permanent, but only as a part of the decree *a mensa et thoro*. Alimony, therefore, under the English law had no independent existence, and no Court, not even the Ecclesiastical, could grant alimony when it was the only relief sought. This doctrine was adopted and followed in the early decisions of many of the States in this country, but not in Maryland.

During the short existence of the Republic in England (1649-1660), after the first King Charles was beheaded, the Ecclesiastical Court was abolished; and, as a result, for at least until the restoration of the monarchy, the entire jurisdiction in all cases of alimony and of separate maintenance devolved, as a matter of necessity, upon the Court of Chancery. In Maryland, there never was an Ecclesiastical Court; therefore the High Court of Chancery (or the Court of Ordinary) always had, even under the Provincial Government, entire jurisdiction of claims for alimony, or separate maintenance, from the husband based on his misconduct. Apparently, at that time this misconduct was limited to adultery and cruelty. *Galwith v. Galwith,* 4 Harris & McH. 477 (a case wherein the Lord Proprietary of Maryland presided) ; *Hewitt v. Hewitt,* 1 Bland 101 ; *Helms v. Franciscus,* 2 Bland 544, 565. In 1777, by legislative enactment (now Sec. 14 of Art. 16 of the Maryland Code) the courts of equity

of this State were given specific authority to hear and determine all causes for alimony.

From the earliest times in this State, divorces were granted by, and emanated from, the legislature; but an attempt by the legislature to grant alimony was held to be a judicial function and therefore unconstitutional. *Crane v. Meginnis,* 1 Gill & J. 463, 474. In 1841, the legislature granted jurisdiction of all divorce actions to the courts of equity of this State (now Secs. 31, 33 and 34 of Art. 16). It was thereafter held that these enactments did not preclude the legislature from granting divorces, *Wright v. Wright,* 2 Md. 429, 450, but by Sec. 33 of Art. 3 of the Maryland Constitution, the legislature is now prohibited from so doing.

So, at the present time and for many years past in Maryland, the jurisdiction to hear and determine questions of divorces and alimony, both temporary and permanent, is, and has been, vested in the courts of equity in this State. Alimony has never been defined here by statute; but, from the beginning, it has never been considered, as in some States, as a division of property. It "is a maintenance afforded to the wife, where the husband refuses to give it, or where from his improper conduct compels her to separate from him. It is not a portion of his real estate, to be assigned to her in fee simple * * * but a provision for her support, to continue during their joint lives, or so long as they live separate." *Wallingsford v. Wallingsford,* 6 Harris & J. 485, 488. And, without exception, this Court has held that in a suit for alimony alone, the wife must allege and prove facts sufficient in themselves to support a decree for a divorce *a mensa* or *a vinculo.* In other words, in order that she be entitled to alimony, she must show she is entitled to either a partial or an absolute divorce. Among the many cases so holding, are: *Staub v. Staub,* 170 Md. 202, 208, 183 A. 605; *Hood v. Hood,* 138 Md. 355, 361, 113 A. 895; and *Polley v. Polley,* 128 Md. 60, 63, 97 A. 526.

We shall quote briefly from several cases holding to like effect: The Court "* * * can not allow itself to receive any matter as a sufficient ground for granting alimony alone, which would not be a sufficient foundation * * * for grant-

ing a divorce *a mensa et thoro* together with its incident alimony * * *". *Outlaw v. Outlaw,* 118 Md. 498, 503, 84 A. 383; "* * * alimony alone can only be granted upon grounds sufficient to justify a divorce *a vinculo* or *a mensa.*" *Polley v. Polley, supra;* and "* * * there can be no allowance for alimony where there is no right to a divorce * * *." *Melson v. Melson,* 151 Md. 196, 205, 134 A. 136.

There are a few cases that hold that illicit relations by the wife after she has obtained an *absolute* divorce are not a bar to future payments of alimony. Among these are *Suozzo v. Suozzo* (N. J.), 1 A. 2d 930, 931, 932 and *Hayes v. Hayes* (N. Y.), 115 N. E. 1040; *Cooley v. Cooley,* 244 Ill. App. 488. The Minnesota Court in *Lindbloom v. Lindbloom,* 230 N. W. 117, points out that most of the Courts that have held in the above manner base the same upon the fact the alimony was in reality a division of property, or that the husband had received property from the wife or her industry, and it would be inequitable for him to retain the same, without making provision for her support. Some of them base their rulings on the further fact that where there is an absolute divorce, the marital ties are severed—the marriage is dissolved—and thereafter the wife owes to the husband no greater obligation than she owes to the public at large, or upon statutes. In 82 *A. L. R.* p. 540, it is stated: "It is an almost universal rule that permanent alimony will be denied to a wife who has been found guilty of adultery", citing many cases.

There is a long line of decisions and authorities that hold that where there is no absolute divorce, adultery by the wife is a defense to her suit for separate maintenance and support, or it will justify a modification or revocation of a decree for alimony. *Cariens v. Cariens* (W. Va.), 40 S. E. 335; *Jennison v. Jennison* (Ga.), 71 S. E. 244; 6 *A. L. R.* ps. 34, 35, where many cases are cited. See also *Bishop on Mar., Div. and Sep.* (1st Ed.), Vol. 1, par. 1230, wherein is stated: "Ordinarily if, while husband and wife are living apart, under circumstances rendering him liable for her support, she commits adultery, his liability ceases, * * *." And to like effect is *Nelson, Divorce and Annulment* (2d Ed.), Vol. 3, par. 32.21,

where it is said: "Where both parties are at fault, or guilty of marital misconduct, separate maintenance will be denied the wife, since the fault or misconduct of one may not be set off against that of the other so as to leave the wife's right to maintenance unimpaired."

And there is very respectable authority that holds that a wife's adultery is a defense to her claim for maintenance, notwithstanding the husband was likewise guilty of the same offense. *Piper v. Piper* (N. J.), 176 A. 345; *Hawkins v. Hawkins* (N. Y. Ct. of App.), 86 N. E. 468; *Leib v. Leib* (Can.), 6 Terr. L. Rep. 308; *Mays v. Mays*, 22 N. Y. S. 2d 702. Cf. *Com. ex rel. Crabb v. Crabb* (Pa. Super.), 180 A. 902. And at least five States have, or had, statutes prohibiting alimony to an adulterous wife: Florida; Michigan; Minnesota; Nebraska; and Wisconsin.

In this State, a limited divorce is one from bed and board. It grants unto the injured spouse the right to live separate and apart from the one at fault. However, the parties remain *man* and *wife*, and there is no severance of the marital bonds. Alimony stems from the common law duty of a man to support his wife, and, in Maryland, has always been considered as outlined above. We hold the proper rule, supported by reason and authority, is that when a wife, who is living separate and apart from her husband due to his fault and who has obtained no more than a limited divorce from him, commits adultery, she forfeits her right to her husband's support and the future payments of alimony. We agree with the New Jersey Court of Chancery in the case of *G—— v. G——*, 56 A. 736, 740, when it said: "Under a divorce *a mensa et thoro* the marriage relation still exists, and with it the duty of chastity. Such a divorce is not a license to the wife to indulge in sexual connection with another man, * * *." Holding as we do, it afforded the wife no justification for complaint when the Chancellor suspended her alimony payments.

It will be noted, we have not been required in this suit to pass upon the right of a wife, who has been granted an absolute divorce and alimony and who thereafter commits adultery,

to continue to receive support from the former husband, and express no opinion thereon at this time.

If there is to be any change in policy in this State with reference to divorces, recrimination, alimony, *et cetera,* it must emanate from the Legislature and not from the Courts.

> *Case remanded without affirmance or reversal of the decree, and case remanded for correction of the decree in accordance with this opinion, appellee to pay the costs.*

HENDERSON, J., filed the following dissenting opinion, in which HAMMOND, J., concurred.

In this case a majority of the court holds that a wife who commits an act of adultery, after she has obtained a decree for divorce *a mensa et thoro* on the ground of abandonment and desertion by the husband and after the lapse of the statutory period of eighteen months from the decree, forfeits all right to alimony under the decree. In a former appeal in this same case, we held that the husband was not entitled to a divorce, despite proof of the wife's adultery. *Courson v. Courson,* 208 Md. 171. The holding was based on the ground of recrimination, the wife having a valid cause of action for a divorce *a vinculo* before the act was committed and before the husband's bill asserting a cause for divorce *a vinculo* was filed. The court applied the rule laid down in the converse situation in *Green v. Green,* 125 Md. 141, as the settled law of this State, and in accordance with the prevailing view in other jurisdictions. Cf. *Williams v. Williams,* 156 Md. 10, where it was held that a decree *a mensa* to a wife was no bar to a bill alleging adultery on her part within the statutory period. Nevertheless, it seems anomalous that the deserting husband, who was denied a dissolution of the marriage bonds, because the wife established her right to an absolute divorce as a defense to his bill, should be relieved of all liability for the wife's support. He now obtains the monetary fruits of a divorce to which he is not otherwise entitled, even though it has been judicially determined that his abandonment con-

tinued uninterruptedly for at least eighteen months, and is final and deliberate, and the separation of the parties is beyond any reasonable expectation of reconciliation. The argument is that because the marriage bonds are not severed she owes him a personal and permanent duty of chastity, as distinguished from a general duty to society, and that the duties of chastity on the one hand and support on the other are reciprocal and inseparable. Yet it is perfectly clear that they are married in name only and all hope of reunion is at an end.

This is a case of first impression in this State, and on principle and authority I think the decision is unsound. A right to support may survive a dissolution of the marriage, which would free her from a duty of chastity. It is well settled that alimony may be granted not only after a divorce *a mensa,* the type granted by the Ecclesiastical courts, but also after a divorce *a vinculo,* if awarded at the time of the decree or the jurisdiction to award it is reserved. See *Johnson v. Johnson,* 202 Md. 547, 552, and concurring opinion, p. 559; *Foote v. Foote,* 190 Md. 171, 180. Cf. *Emerson v. Emerson,* 120 Md. 584, and *Marshall v. Marshall,* 162 Md. 116. Such power is recognized in most of the other states, whether reserved or not. It is generally held that adultery of a wife committed after an absolute decree is not a bar to its enforcement. *Cole v. Cole,* 31 N. E. 109 (Ill.). Cf. *Rang v. Rang,* 211 Ill. App. 385; *Christiano v. Christiano,* 41 A. 2d 779 (Conn.); *Suozzo v. Suozzo,* 1 A. 2d 930 (N. J.); *Hayes v. Hayes,* 115 N. E. 1040 (N. Y.). See also *Browne, Divorce and Alimony* (1890), pp. 16, 296. Other cases are collected in a note, 6 *A. L. R.* 2d 859. Subsequent to the *Hayes* case, New York enacted a statute in 1938 providing that a wife who openly lives with a paramour may forfeit her right to alimony. See *Waddey v. Waddey,* 49 N. E. 2d 8 (N. Y.). Under the statute, a casual or occasional act of adultery would appear to be no bar. Cf. *Hart v. Hart,* 23 Hawaii 639, and *Weber v. Weber,* 140 N. W. 1052 (Wis.). In *Cariens v. Cariens,* 40 S. E. 335 (W. Va.), the general rule was recognized, but it was held that where the adultery was committed after a divorce *a mensa,* under circumstances that would entitle the husband to a divorce *a vinculo,* the right was for-

feited. In some states it is held that the courts may exercise discretion in modifying or rescinding an award after an absolute divorce, in cases of flagrant misconduct, such as living with a paramour or in prostitution. *Lindbloom v. Lindbloom,* 230 N. W. 117 (Minn.) ; *Haritos v. Haritos,* 202 N. W. 181 (Wis.). In a few states the existence of such resources is merely viewed as bearing upon the need for support, not upon the question of liability.

In many states it is provided by statute that alimony may be granted to a wife even where the husband is granted a divorce on the ground of her misconduct. Some courts reach the same result where the statutes are not explicit on the point. See 17 *Am. Jur., Divorce,* § 615 and note, 34 *A. L. R.* 2d 313. This is true even where the wife is found guilty of adultery, although in a few states this type of misconduct is excepted. The English cases follow the general rule. In *Ashcroft v. Ashcroft* [1902], 71 L. Journal, Prob. 125, (C. A.) it was held under § 32 of the Matrimonial Causes Act of 1857, that a support order was proper even where the husband was granted a divorce on the ground of the wife's adultery. Frequently, but not invariably, the English courts insert in the decree a limiting clause, *dum sola et casta vixerit,* while she remains single and chaste. When omitted from the decree, subsequent adultery is no ground for relief. *Collins v. Collins,* 103 L. T. N. S. 80 [1910]. These decisions rest upon a wide statutory discretion, but the reason for its exercise is that the wife should not be driven into the street to starve, or driven by want to continue in a life of vice. See *Graves v. Graves,* 108 Mass. 314. These decisions followed the established practice in Parliament in granting legislative divorces, although they are probably inconsistent with the earlier practice in the Ecclesiastical courts. *Blackstone, Commentaries* (4th Ed.), p. 923, says these courts did not award alimony after a wife's adultery. But at p. 442, he says alimony is in the discretion of the court in consideration of all the circumstances. "But in case of elopement, and living with an adulterer, the law allows her no alimony." It seems to be clear, however, that temporary alimony was always allowable regardless of fault.

While I assume for present purposes that in Maryland permanent alimony may not be awarded to a guilty wife, we have held that a wife may be entitled to alimony *pendente lite*, even after an adjudication of her adultery. *Dougherty v. Dougherty*, 189 Md. 316, 321. Judge Markell, for the court, there said: "We may assume that if this defense [recrimination on the ground of adultery] had prevailed, defendant would not have been entitled to permanent alimony. It does not necessarily follow that plaintiff might not have been compelled to support her, *e. g.*, by criminal proceedings (Code, art. 27, sec. 89, as amended ▌) or by actions at law for necessaries. Until a suit for divorce is finally disposed of, maintenance *pendente lite* can be enforced by the divorce court, without resort to criminal proceedings or actions at law." See also note, 2 *A. L. R.* 2d 307.

Even where a marriage has not been dissolved, it has been held that a husband is not necessarily relieved of his duty to support by the adultery of a separated wife. It is generally held that where a husband and wife are living apart under a separation agreement, the husband may not set up adultery by the wife as a bar to payments under the agreement, at least in the absence of a *dum casta* clause. *Whittle v. Schlemm*, 109 A. 305 (N. J.); note, 8 *A. L. R.* 1452. Many English authorities to this effect are cited in this note. In *Bishop, Marriage, Divorce, and Separation*, (1891), § 1231, it is said that where both parties are in the wrong, as where they have severally committed adultery, and they are living apart. the husband can be compelled to support the wife. The learned author says: " * * * it is familiar doctrine that, in these circumstances, neither can have a divorce from the other, because neither as plaintiff could come into court with clean hands. But there is room for grave doubt whether this bar is applicable in a suit for necessaries furnished the wife. * * * Besides, in principle, each having a just ground for living apart from the other, or each being a suitable companion for the other, they now stand toward each other the same as though they were living in separation by mutual

consent, when by familiar law the husband must support the wife. And this is believed to be the true doctrine." In *Rigsby v. Rigsby*, 97 S. W. 2d 835 (Ky.), it was held that a wife was entitled to alimony in a situation where, because of recrimination, both were guilty of matrimonial offenses. In *Mueller v. Mueller*, 282 P. 2d 869 (Cal.), where each party established a right to an absolute divorce, and the rule of recrimination was not applied, it was held that the wife was entitled to alimony.

If the analogy to the situation where the parties are living apart under a separation agreement is pertinent to the situation in the instant case, as suggested by Bishop, our recent decisions in regard to divorces on non-culpatory grounds seem very much in point. In *Foote v. Foote,* 190 Md. 171, it was held that permanent alimony may be granted to a wife who obtains a divorce on the ground of voluntary separation for the statutory period of five years [now three years]. In *Matysek v. Matysek,* 212 Md. 44, 51, it was held that a wife was entitled to a divorce *a vinculo* (and presumably to an award of alimony) on the ground of voluntary separation for at least three years, despite the fact that the husband set up recrimination based on the wife's adultery within the statutory period. Chief Judge Brune, speaking for the court, stated the reason for the rule denying effect to recrimination in suits of this character, quoting from *Smith v. Smith,* 54 R. I. 236, 172 A. 323, 324: " 'It is evident that the conjugal life and the family life of the parties are permanently disrupted. There is no inclination for and no prospect of a reconciliation. Nothing is left of the marriage relation but the legal tie. Respondent contends that, regardless of these facts, petitioner should be punished for his misconduct by a refusal of the trial justice to dissolve the marriage. If it appeared that there was any advantage to the family or to the state in continuing the marital status, the divorce might well be denied. But no such advantage is apparent.' " He also said (p. 54): "We think that it [the statute] manifests an intention to permit the marriage relationship to be terminated in law, as well as in fact, without regard to fault."

It may be that a logical application of this reasoning would

lead to a denial of recrimination as a defense in any divorce proceeding, even on culpatory grounds. Many states have adopted a rule of comparative rectitude under such circumstances. Here, however, we are bound by the doctrine of *stare decisis,* as well as the law of the case. I see no reason, however, to extend the recrimination theory to the forfeiture of permanent alimony previously awarded. In fact, the weight of authority, as I see it, is to the contrary, and the result does not serve the ends of social justice. In *Waters v. Waters,* 191 Md. 436, 440, it was said that alimony is never a punitive measure, and should not be increased because of the adultery of the husband. The same reasoning would seem to apply in the converse situation. I think the prior award should not be rescinded, where need is definitely established, because of the act of misconduct established in the instant case. If, as we have held, her act does not entitle him to a divorce because of his equal fault, it should not absolve him from a duty to support a wife who may otherwise become a public charge. If both parties are in *pari delicto,* they should at least be allowed to remain in *statu quo.* The decree *a mensa* is not superseded by any absolute decree, because recrimination bars each party from ever obtaining one. Until superseded, it should not be vitiated except upon a showing of facts relating to need or comparative resources that would call for its modification in the usual course.

For these reasons, I think the Chancellor erred in striking down the award solely because of her adultery, even though he reserved jurisdiction to make a future award. The question whether an award might be terminated under circumstances shocking to the conscience of the court and outraging public morals may be left open. It may be noted that no objection was raised to her continued custody of the child, which might well be changed if she should pursue such a course of conduct.

Judge Hammond authorizes me to say that he agrees with the views herein expressed.